**INNOVATIVE COMMUNICATIONS CORPORATION; Virgin Islands Telephone Company and St. Croix Cable T.V., Petition,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**National Labor Relations Board, Petitioner,**

v.

**Innovative Communications Corporation; Virgin Islands Telephone Company and St. Croix Cable T.V., Respondents.**

Nos. 01–1786, 01–2205.

United States Court of Appeals, Third Circuit.

Argued April 22, 2002.

Decided June 13, 2002.

Anthony R. Comden, Jeffrey J. Fraser [Argued], Varnum, Riddering, Schmidt & Howlett, Grand Rapids, MI, for Petitioner

(01–1786)/Respondent (01–2205), Innovative Communications Corporation; Virgin Islands Telephone Company and St. Croix Cable T.V.

Aileen A. Armstrong, Joan Hoyte [ARGUED], Margaret A. Gaines, Darlene Haas, National Labor Relations Board, Washington, DC, for Respondent (01–1786)/Petitioner (01–2205), National Labor Relations Board.

Before SCIRICA, RENDELL, and NOONAN,* Circuit Judges.

## OPINION

RENDELL, Circuit Judge.

Companies ICC, VitelCo, and St. Croix Cable petition for review of the final order of the National Labor Relations Board ("NLRB" or "Board") that found that they had violated sections 8(a)(1), (2), (3) and (5) of the National Labor Relations Act ("the Act"). The Board cross-petitions for enforcement of its order.

Whether Petitioners violated the Act turns on whether there was an "accretion" of St. Croix Cable employees into the VitelCo/United Steelworkers of America ("USW") bargaining unit. Accretion is "simply the addition of a relatively small group of employees to an existing unit where these additional employees share a sufficient community of interest with the unit employees and have no separate identity." *E.g., American Med. Response, Inc.*, 335 N.L.R.B. No. 90, 2001 WL 1134685 (2001).

Here, the ALJ concluded that there was no accretion, so the Act was violated. The NLRB affirmed the ALJ's findings and rulings, and adopted the ALJ's recommended order with a few modifications.

For the reasons below, we conclude that substantial evidence supports the finding that there was no accretion as of August 30, 1999, and the conclusion that Petitioners thus violated the Act, and we will affirm the Board's decision in that respect.

However, because a later accretion may have taken place, portions of the order may no longer be appropriate. Accordingly, we will remand to the NLRB for it to determine if, and potentially when, accretion later occurred and to craft an appropriate remedy in light of its determination. If no accretion has taken place, we will enforce the order in full.

## I.

Our jurisdiction is clear under §§ 10(e) and 10(f) of the Act. 29 U.S.C. § 160(e), (f). We apply a "substantial evidence" standard to "the Board's factual determinations and reasonable inferences derived from factual determinations." *Citizens Pub'g & Printing Co. v. N.L.R.B.*, 263 F.3d 224, 232 (3d Cir.2001); 29 U.S.C. § 160(e). Our review of the Board's legal analysis is plenary, but we defer to its interpretation of the Act. *Citizens Pub'g & Printing*, 263 F.3d at 232. Although the facts here are stipulated, we will review the application of accretion policy to these facts for substantial evidence. *See, e.g., N.L.R.B. v. Security–Columbian Banknote Co.*, 541 F.2d 135, 140–41 (3d Cir.1976).

## II.

The parent company ICC has five subsidiaries, including VitelCo and St. Croix Cable. Although VitelCo, the largest subsidiary, had been party to a collective bargaining agreement with the USW since 1972, the employees of all of the other

* Honorable John T. Noonan, Jr., Circuit Judge of the United States Court Appeals for the Ninth Circuit, sitting by designation.

subsidiaries were unrepresented through at least September 22, 1999. A56.

In 1998, VitelCo decided to consolidate all of the job functions of the various subsidiaries, so began negotiating with the USW to do so. These confidential negotiations eventually resulted in agreement between VitelCo and USW on all of the issues on September 22, 1999. On September 30, 1999, VitelCo and the USW entered into a collective bargaining agreement that incorporated these changes and that became effective on October 1, 1999. A57–58.

On September 22, 1999—before the VitelCo/USW agreement became effective—the St. Croix Cable employees voted unanimously to be represented by Our Virgin Islands Labor Union ("OVILU"). A56. The alleged violations occurred after this election, when petitioners treated USW as the representative of St. Croix Cable employees and applied the VitelCo/USW collective bargaining agreement to them.

### III.

■ Petitioners argue that the St. Croix Cable employees were accreted into the USW/VitelCo bargaining unit, that the Board's remedy exceeded its authority, and that the Board's order is moot because of its later recognition that accretion occurred.[1]

*1. Accretion*

The factors that must be weighed when deciding whether there has been an accretion include:

integration of operations, centralization of managerial and administrative control, geographic proximity, similarity of working conditions, skills and functions, common control of labor relations, collective-bargaining history and interchange of employees

*GHR Energy Corp. v. Oil, Chemical Intern. Union,* 294 N.L.R.B. 1011, 1051, 1989 WL 224136 (1989). The Board has said that it follows a "restrictive policy in finding accretion because it forecloses the employees' right to select their bargaining representative." *Id.* at 1016.

Whether accretion has occurred is evaluated on the facts in existence on the date the union demands recognition. *E.g., id.* at 1052 & n. 37. No particular form is required for a demand for recognition; the company just needs to be reasonably informed that the union seeks to represent the company's employees. *E.g., Yolo Transp. v. Teamsters Cannery Union Local 857,* 286 N.L.R.B. 1087, 1087 n. 2, 1987 WL 90043 (1987). Accordingly, the relevant date is when USW claimed to represent the St. Croix Cable employees, which was the date when the USW asked to intervene in the election for the representative of St. Croix Cable—August 30, 1999—or, at the latest, September 22, 1999, when VitelCo and USW reached an agreement about the consolidation of job functions. A136. Both dates precede the planned consolidation of functions.[2]

Substantial evidence in the record supports the conclusion that, as of either of

---

**1.** Petitioners further argue that ICC was obliged to recognize USW as the incumbent union. But because the St. Croix Cable employees were unrepresented until they elected OVILU, the USW was not their "incumbent union." Instead, this was an initial organizing situation, in which employers are required to be neutral. *See Grossman v. Local 1115,* 262 N.L.R.B. 955, 1982 WL 24671 (1982).

Petitioners also contest the ALJ's conclusion that there would be no accretion even if the plans to consolidate came to pass, but we do not address this issue because the Board explicitly declined to reach it.

**2.** Even the date Petitioners propose—October 1, 1999—precedes planned consolidation.

those dates, no accretion had taken place. Not only had there been no corporate merger of VitelCo and St. Croix Cable, but also the employees of these two subsidiaries worked at separate facilities.[3] VitelCo and St. Croix Cable provided services as to different products—telephone and cable TV, respectively—and these services were not integrated. In order to consolidate job functions, "cross-training of all employees to perform telephone, cable, cellular, and all other communication functions" would be required, A57, which indicates that the pre-consolidation job functions were separate. Finally, St. Croix Cable had its own general manager, and, although the parties agree that a human resources representative visited St. Croix Cable, there was no evidence of common control of labor relations. In sum, the facts stipulated indicate that there was a planned consolidation, but that it had not taken place as of the relevant date.[4]

2. *Remedy*

▆ The ALJ had recommended an order restoring the status quo, but because some of the unilateral changes helped and some hurt the employees, the NLRB modified the order so that restoration was conditioned on the "affirmative desires of the [employees] as expressed through their bargaining representative." A5.

Board policy is clear that when some acts are to the benefit and some to the detriment of the affected employees an order like that here is appropriate. *See Children's Hosp. of San Francisco,* 312 N.L.R.B. 920, 931, 1993 WL 398480 (1993); *see also N.L.R.B. v. Rockwood Energy & Mineral Corp.,* 942 F.2d 169 (3d Cir.1991) (enforcing an order that restored terms and conditions but did not order respondents to undo wage increases or benefits without request from the union).

Our review of the Board's choice of remedy is limited to asking whether a remedy goes beyond the scope of the Board's authority. *See e.g., Sure–Tan, Inc. v. N.L.R.B.,* 467 U.S. 883, 899, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984). The Board may issue orders that "effectuate the policies" of the Act, 29 U.S.C. § 160(c), which "encompasses the requirement that a proposed remedy be tailored to the unfair labor practice it is intended to redress," but gives the Board broad discretion. *Id.* at 900. We do not find that this remedy exceeded this broad discretion.

3. *Mootness*

Finally, petitioners argue that the part of the order that commands ICC to recognize OVILU is moot[5] because "[t]he Board

---

3. Petitioners argue that it does not matter that the employees worked in different facilities because a system–wide bargaining unit is most appropriate in the public utility industry. *E.g., New England Tel. & Tel. Co.,* 90 N.L.R.B. 639, 640, 1950 WL 9006 (1950). However, the cases Petitioners rely upon do not merely state the general rule, but also examine whether the factors supporting a finding of accretion are present in the particular case. As noted above, substantial evidence supports the conclusion that they are not present here.

4. Petitioners' argument that the employees were accreted because they had the same

wage scale and same benefits after October 1, 1999, is without merit. Not only is this after the relevant date, but they had the same wage scale and benefits only because they were treated as part of the VitelCo/USW bargaining unit—the very action that was said to violate the Act.

5. The case as a whole is not moot because damages were sought in addition to injunctive relief. *E.g., Ruocchio v. United Transp. Union, Local 60,* 181 F.3d 376, 383 (3d Cir. 1999). The order directs petitioners to reimburse employees and make them whole for any losses they experienced during the period while they were represented by OVILU.

has conceded that the St. Croix Cable employees were accreted into the larger VitelCo unit on November 21, 2000, the date that all employees were moved into one facility." Petitioners' Reply Brief on Appeal, at 5. The changed circumstance that would, assertedly, render this relief moot is either an intervening adjudication or the fact of the November 2000 accretion.

We need not address the effect an intervening adjudication might have here because Petitioners have provided no evidence that there has been one. The documents they submitted indicate that the Board's General Counsel and Regional Director maintained in related proceedings before the Board that accretion occurred on November 21, 2000.[6] However, these documents show only an exercise of the prosecutorial function, not a finding of accretion by the Board, as Petitioners suggest.[7]

Nonetheless, we cannot ignore the asserted fact that an accretion did occur in November 2000, potentially making a recognition and bargaining order inappropriate at this time. Not only has Board's counsel taken the position in other proceedings that accretion occurred in November 2000, but also Board's counsel indicated at oral argument in this case that "some accretion" later occurred and that whether the remedy was appropriate would come to light in compliance proceedings.

The Board ordered many types of relief. It ordered Petitioners to cease and desist from giving assistance and support to the USW, recognizing or bargaining with the USW as the representative of the St. Croix Cable employees, entering into or giving effect to a collective bargaining agreement with the USW that covered the St. Croix Cable employees, encouraging membership in the USW or discouraging membership in OVILU by discriminating with respect to the terms of employment, unilaterally changing employment conditions in St. Croix Cable, or otherwise interfering with the exercise of these employees' rights under the Act. It also ordered that Petitioners withdraw and withhold recognition of the USW as to the St. Croix Cable employees, recognize and bargain with OVILU as their representative, and reimburse these employees for any money withheld pursuant to the collective bargaining agreement with the USW. Finally, as discussed above, Petitioners were ordered to revoke the changes in the terms and conditions of employment implemented on October 1, 1999 (if the St. Croix Cable employees, through their OVILU representative, so desired) and to make employees whole for any losses suffered because of these changes.[8] While some of the damages or-

6. Petitioners offered four main documents: (1) two complaints by the General Counsel of the National Labor Relations Board that stated that accretion had occurred on November 21, 2000; (2) a letter from the NLRB's acting regional director declining to issue a complaint as to the withdrawal of recognition from OVILU; and (3) a letter from the Office of the General Counsel denying OVILU's appeal from this partial refusal to issue a complaint.

7. *E.g., N.L.R.B. v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 124, 108 S.Ct. 413, 98 L.Ed.2d 429 (1987)("[D]eci-

sions whether to file a complaint are prosecutorial" and there is a clear division between the Board's adjudicative functions and the General Counsel's prosecutorial functions); *BE&K Constr. Co.*, 329 N.L.R.B. No. 68, at 13 & n.49, 1999 WL 33459019 (1999) (General Counsel's issuance of a complaint does not constitute a decision on the merits), *cert. granted on the grounds*, —— U.S. ——, 122 S.Ct. 803, 151 L.Ed.2d 689 (2002).

8. It also directed Petitioners to preserve records necessary for the calculation of backpay, post a notice of these remedies, and send the

dered may continue to be appropriate, many of the other types of remedies may need to be modified in light of a later accretion, if in fact, accretion did occur.

For the reasons above, we will affirm the Board's finding that accretion had not occurred as of August 30, 1999, and that Petitioners thus violated the Act. However, the case will be remanded to the Board for it to determine if an accretion has since occurred. If not, the order will be enforced in full, and the petition for review will be denied. If the Board should craft the remedies appropriate in such changed circumstances.

Regional Director a sworn statement of the steps taken to comply with this order.