In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 12-1264 & 12-1362

CLAUDE T. HARRELL, JR., Regional Director
of Subregion 33 of the National Labor
Relations Board, for and on behalf of the
National Labor Relations Board,

*Petitioner-Appellee/*
*Cross-Appellant,*

*v.*

AMERICAN RED CROSS, HEART OF AMERICA
BLOOD SERVICES REGION,

*Respondant-Appellant/*
*Cross-Appellee.*

Appeals from the United States District Court
for the Central District of Illinois.
No. 1:11-cv-01284-JES-JAG—**James E. Shadid**, *Chief Judge*.

ARGUED SEPTEMBER 7, 2012—DECIDED APRIL 23, 2013

Before CUDAHY, ROVNER, and TINDER, *Circuit Judges*.

CUDAHY, *Circuit Judge*. This is a case about a company
charged with unilaterally changing conditions of employ-
ment in order to cripple a new union.

A new union of blood collection specialists (the Union) for the American Red Cross (ARC) was elected in 2007 and certified in 2010. During the unionization process, ARC filed repeated objections, thereby forcing impoundment of the 2007 ballots and delaying certification of the Union. These objections were later overruled by the National Labor Relations Board (NLRB).

During the delay between the 2007 election and the 2010 certification, ARC made several changes in its union-represented employees' terms and conditions of employment. The changes were made without notice to or bargaining with the new Union. The many unilateral changes made by ARC included: suspending employees' merit pay increases; discontinuing its matching contributions to the employees' 401(k) plan; closing its defined pension plan to new employees; changing health insurance benefits; promoting team leaders to team supervisors and having them continue to perform unit work; reassigning truck loading and unloading work outside the bargaining unit; decreasing the number of personal time-off hours an employee can carry over from year to year; and allowing non-unit employees to perform bargaining unit work.

As a result of ARC's unilateral changes, worker involvement in the Union activities declined precipitously. Employee attendance at Union meetings declined roughly 88% from October 2010 to September 2011. Some employees feared retaliation by ARC if they associated with the Union, and some employees were discouraged by the Union's failure to prevent ARC's suspension of the merit pay program.

The Union Director and NLRB filed suit, seeking interim injunctive relief from the unilateral ARC working condition changes, pending completion of the Board's administrative proceedings against ARC. The administrative law judge (ALJ) held that ARC violated § 8(a)(5) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(5), by making these unilateral changes. ARC argued that it could make these changes because the Union was not yet certified due to the pending objections that ARC itself filed. This claim is contrary to well-established NLRB law.

The district court reviewed the testimony, arguments, briefs, and the record in the administrative proceeding. The court found that the NLRB had shown a likelihood of success on the merits and that the newly formed Union had suffered irreparable harm as a result of ARC's unilateral changes. In finding irreparable harm, the court relied on evidence demonstrating that employees were terminating their employment with ARC to obtain better pay, and that the Union suffered a dramatic downturn in attendance at its meetings due to the unilateral actions of ARC. However, the district court ordered only a rescission of ARC's failure to grant scheduled merit pay increases to unit employees. It reasoned that ordering rescission of the other unilateral changes would create practical problems, and force the court to "micro-manage" employment relationships. The district court entered a subsequent temporary injunction prohibiting ARC from making further unilateral changes to employment conditions.

Both parties appealed. ARC seeks a lift of the injunction. NLRB seeks an order for rescission of the remaining ARC unilateral actions. The district court had jurisdiction under § 10(j) of the Act, 29 U.S.C. § 160(j). This court has jurisdiction under 28 U.S.C. § 1291. This court reviews a district court's decision to grant injunctive relief for an abuse of discretion. *Bloedorn v. Francisco Foods, Inc.*, 276 F.3d 270, 286 (7th Cir. 2001); *NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1566 (7th Cir. 1996). A district court's order will be reversed if it "'depends on faulty legal premises, clearly erroneous factual findings, or improper application of the criteria governing pre-liminary injunctive relief.'" *Electro-Voice*, 83 F.3d at 1566 (quoting *Kinney v. Pioneer Press*, 881 F.2d 485, 493 (7th Cir. 1989)).

## I.

Under § 10(j)[1] of the Act, courts may grant temporary

---

[1] Section 10(j) of the Act (29 U.S.C. § 160(j)) states:

The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have

(continued...)

injunctions pending the Board's resolution of unfair labor practice cases. This temporary relief is intended to protect a union pending the Board's remedial action. Section 10(j) directs district courts to grant relief that is "just and proper." Interim relief is "just and proper" when four factors are present: (1) NLRB has no adequate remedy at law; (2) the Union will be irreparably harmed without interim relief, and that potential harm to the Union outweighs potential harm to the employer; (3) public harm would occur without the relief; and (4) the Board has a reasonable likelihood of prevailing. *Lineback v. Irving Ready-Mix, Inc.*, 653 F.3d 566, 570 (7th Cir. 2011); *Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 499-500 (7th Cir. 2008); *Bloedorn*, 276 F.3d at 286; *Electro-Voice*, 83 F.3d at 1566. The Director satisfied each criterion for finding injunctive relief.

## A. Likelihood of Success

A district court need only find that "the Director has 'some chance' of succeeding on the merits" before the Board. *Electro-Voice*, 83 F.3d at 1568. The court will "give some measure of deference to the view of the ALJ" in determining the likelihood of success. *Spurlino Materials*, 546 F.3d at 502 (citing *Bloedorn*, 276 F.3d at 288).

---

(...continued)

jurisdiction to grant to the Board such temporary relief or restraining order as it deems *just and proper* (emphasis added).

In the present case, the district court found that the Director has a chance of establishing that ARC violated § 8(a)(5) by unilaterally changing employment conditions. The ALJ's finding that ARC violated § 8(a)(5) by making unilateral changes supports this conclusion. ARC defended these changes by noting that the Union had not yet been certified. However, it is well established that "an employer who makes unilateral changes pending a decision on union certification objections acts at its peril." *NLRB v. Parents & Friends of the Specialized Living Ctr.*, 879 F.2d 1442, 1455 (7th Cir. 1989) (citing *Sundstrand Heat Transfer, Inc. v. NLRB*, 538 F.2d 1257, 1259 (7th Cir. 1976)).

### B. Likely Harm to Employees

In "appropriate circumstances, the same evidence that establishes the Director's likelihood of proving a violation of the NLRA may provide evidentiary support for a finding of irreparable harm." *Bloedorn*, 276 F.3d at 297-98. Therefore, this court does not require specific proof of a causal relationship between employer violations and Union injuries; "the prospect of an irreparable injury may be inferred" from the nature of the violation of the Act. *Id* at 297.

In the present case, the Director demonstrated the irreparable harm resulting from ARC's unilateral changes: unilateral changes prevent the Union from discussing terms, and therefore "strike at the heart of the Union's ability to effectively represent the unit employees." *Merrill & Ring, Inc.*, 262 N.L.R.B. 392, 395 (1982), *enforced*,

731 F.2d 605 (9th Cir. 1984). The decline in employee participation in Union activities following ARC's unilateral changes supports this finding.

### C.  Adequacy of a Remedy at Law

 "The longer that an employer is able to . . . avoid bargaining with a union, the less likely it is that the union will be able to . . . represent employees effectively once the NLRB issues its final order." *Spurlino Materials*, 546 F.3d at 500. In § 10(j) cases, the "adequate remedy at law" inquiry is whether, in the absence of immediate relief, the harm flowing from the alleged violation cannot be prevented or fully rectified by the final Board order. *Id.* ARC argues that because the ALJ has ordered back pay for the employees, there exists an adequate remedy at law precluding injunctive relief. This argument incorrectly focuses solely on the individual workers, and ignores the damage flowing from the crippling of a new union, which transcends the loss of workers' pay. This court has previously found that back pay "will not remedy the adverse impact to the Union and the employees in the interim period." *Id.* at 501.

### D.  Harm Balancing Public Interest

The interest at stake in a § 10(j) proceeding is "'the public interest in the integrity of the collective bargaining process.'" *Bloedorn*, 276 F.3d at 300 (quoting *Eisenberg v. Wellington Hall Nursing Home, Inc.*, 651 F.2d 902, 906-07 (3d Cir. 1981)). Here, the harm posed to

the Union of allowing unilateral changes to stand is apparent: the Union has already become less popular with the employees. This court need not conduct a more thorough analysis. The district court noted that ARC "offered no countervailing demonstration of ir-reparable harm that would result from the grant of in-junctive relief." *Harrell v. Am. Red Cross, Heart of Am. Blood Servs. Region*, No. 11-1284, 2011 WL 5436264, at *4 (C.D. Ill. Nov. 9, 2011). ARC now argues that the administra-tive hurdles of recalculating appropriate wage rates mean its harms outweigh the potential harm to the Union. This argument was not presented to the district court, so it is forfeited.

Due to the fact that all four factors favor interim in-junctive relief, the district court did not abuse its discre-tion in granting partial relief by ordering the rescission of the merit pay freeze.

## II.

Although the district court recognized that ARC's actions were potentially harmful and necessitated in-junctive relief, the court granted only partial relief—rescission of the unilateral cancellation of scheduled merit pay increases. Applying the same four-factor analysis to the other unilateral changes forced through by ARC, we find that the district court's limited injunc-tion failed to fully address the harms that it recognized. The district court noted that the unilateral changes dis-advantaged the Union by "put[ting it] in the position of having to bargain to get back benefits or conditions

of employment that its members would already have had in the absence of the post-election changes made by [ARC]." *Harrell,* 2011 WL 5436264, at *3. However, the district court elected not to grant rescission of the remaining changes, finding that instituting the changes would "create practical issues," would require the court to "micro-manage the employment relationship," and consequently, "are best addressed in collective bargaining discussions and do not warrant injunctive relief at the present time." *Id.* at *6. While this court understands the district court's general concerns about micromanaging employment relationships, the district court cited no specific evidence of practical difficulties in rescinding the remaining changes, or what it meant by "micro-managing" the employment relationship. Thus, the district court abused its discretion in failing to order rescission for all ARC unilateral actions.

First, the intent of Section 10(j) is to "restor[e] the status quo as it existed before the onset of the unfair labor practices." *Electro-Voice,* 83 F.3d at 1575. The district court found that the unilateral changes had disturbed the status quo, and put the Union in the position of having to bargain back benefits and conditions of employment that its members would have already had in the absence of the post-election changes made by ARC. The district court determined that these issues would best be handled at the bargaining stage. However, putting the Union in the position of needing to "bargain back" these conditions is often the employer's goal, thereby changing the status quo and forcing the Union to bargain for previously attained rights. *See NLRB v.*

*Hardesty Co., Inc.*, 308 F.3d 859, 865 (8th Cir. 2002) (Section 8(a)(5) forbids employer from making unilateral changes in part to preserve the status quo). There is a long line of cases which support rescission to restore the status quo, in order to remedy exactly this type of unlawful behavior. *See, e.g., Kendall College*, 228 N.L.R.B. 1083 (1977), *enforced*, 570 F.2d 216 (7th Cir. 1978); *Innovative Commc'ns Corp.*, 333 N.L.R.B. 665, 665 n. 6 (2001), *enforced*, 39 Fed. Appx. 715 (3d Cir. 2002); *Cal. Pac. Med. Ctr. v. NLRB*, 87 F.3d 304, 311 (9th Cir. 1996); *Herman Sausage Co.*, 122 N.L.R.B. 168, 172-73 (1958), *enforced*, 275 F.2d 229 (5th Cir. 1960).

Second, the district court's finding of judicial micro-managing is misplaced. The rescission of changed terms and conditions would merely return the parties to the lawful status quo, before ARC began targeting the Union for unlawful injury. The court would not then be required to "micro-manage" the employment relationship. Now that the Union is certified, ARC may make good faith attempts to change conditions through negotiations and without court interference. *See Taft Broad. Co.*, 163 N.L.R.B. 475, 478 (1967), *enforced sub nom. AFTRA v. NLRB*, 395 F.2d 622 (D.C. Cir. 1968) ("After bargaining to an impasse, that is, after good faith negotiations have exhausted the prospects of concluding an agreement, an employer does not violate the Act by making unilateral changes that are reasonably comprehended within his preimpasse proposals." 395 F.2d at 624).

For these reasons, the district court's order granting restoration of merit pay is affirmed and the district

court's denial of interim relief for the other unilateral changes is reversed. The matter is remanded to the district court to grant the interim injunctive relief sought by the NLRB. ARC shall bear the costs of appeal.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.