In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2699

ETTA SCOTT, on behalf of herself and
others similarly situated,

*Plaintiff-Appellant*,

*v.*

WESTLAKE SERVICES LLC, doing busi-
ness as WESTLAKE FINANCIAL SER-
VICES,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 9289 — **Rubén Castillo**, *Chief Judge.*

ARGUED DECEMBER 10, 2013 — DECIDED JANUARY 23, 2014

Before MANION, ROVNER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Etta Scott filed suit on behalf of
herself and a putative class alleging that defendant Westlake
Services LLC repeatedly called her in violation of the Tele-
phone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").
Before Scott moved to certify a plaintiff class, Westlake offered

to pay Scott the full statutory damages for any calls that violated the TCPA. Scott did not accept the offer. The district court then held that the offer rendered Scott's case moot and entered final judgment, but retained jurisdiction over post-judgment discovery in the case. Scott appeals, and we reverse.

I.  *Factual and Procedural Background*

Scott filed her first amended complaint (the operative complaint in the case) on January 17, 2013. The complaint alleged that Westlake repeatedly called her cell phone using an automated dialer in violation of the TCPA. Scott sought for herself and a putative class: (1) statutory damages of $500 for each negligent violation of the Act and $1500 for each intentional violation of the Act, (2) injunctive relief, and (3) attorney fees. She did not immediately move for class certification.

On February 5, 2013, Westlake sent Scott's attorney an email with a settlement offer. Westlake offered to pay Scott $1500 (the statutory maximum) "for each and every dialer-generated telephone call made to plaintiff." The email went on to say that while Scott had identified twenty dialer-generated calls made to her phone, Westlake believed there were only six, and suggested further discussion to "resolve the discrepancy." Westlake also agreed to pay Scott all costs that she would recover if she prevailed in her lawsuit, and agreed to the entry of an injunction prohibiting Westlake from calling her again without her express permission. The email concluded by warning Scott that, in Westlake's view, its offer rendered her case moot. The next day, Scott moved for class certification and declined the settlement offer. She explained that there was "a significant controversy" concerning how many dialer-gener-

ated calls Westlake had placed to her phone, so the offer was inadequate and did not render her case moot.

Westlake then moved to dismiss Scott's suit as moot. The district court granted the motion, finding that Westlake had offered Scott everything she sought in her complaint thus depriving the court of subject matter jurisdiction. The court recognized, however, that there was sufficient uncertainty about the actual terms of the settlement offer that it would need to retain jurisdiction to enforce compliance with the offer. The court directed the parties to conduct discovery to determine just how many dialer-generated calls Scott had actually received from Westlake so that the amount of Westlake's check to Scott could be calculated. In the court's view, *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994), authorized this procedure as long as the judgment incorporated the settlement offer. Scott appeals the dismissal and the district court's retention of jurisdiction under *Kokkonen*.

II. *Analysis*

Before turning to the substance of Scott's claims, we must first determine the basis of our jurisdiction over this appeal. Post-judgment discovery is ongoing in the district court, and that court may issue further rulings to decide discovery disputes and enforce the settlement offer. Despite these continued proceedings, the district court entered on June 6, 2013 a final judgment that resolved all claims. Upon entry of that final judgment, Scott could not risk waiting for further action. We conclude that we have jurisdiction over the appeal from the final judgment pursuant to 28 U.S.C. § 1291. On to the merits.

Under this circuit's case law, an unaccepted settlement offer can render the plaintiff's case moot if it gives the plaintiff everything she requested. *Damasco v. Clearwire Corp.*, 662 F.3d 891, 895 (7th Cir. 2011); *Gates v. City of Chicago*, 623 F.3d 389, 413 (2010). These cases reason that once "the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate" and thus no controversy to resolve. *Rand v. Monsanto Co.*, 926 F.3d 596, 597–98 (7th Cir. 1991). In other words, "You cannot persist in suing after you've won." *Greisz v. Household Bank (Ill.), N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999).[1]

On the other hand, if the defendant offers to pay only what it thinks might be due, the offer does not render the plaintiff's case moot. *Gates v. Towery*, 430 F.3d 429, 431–32 (7th Cir. 2005). In that situation, the plaintiff still has a stake in the action because she may obtain additional relief if she prevails. The plaintiff's stake is negated only if no additional relief is

---

[1]   Since most plaintiffs are happy to have defendants surrender, this tactic is most controversial as a means to short-circuit a looming class action or as a means to avoid paying attorney fees and costs in light of *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598 (2001). The circuits are split on whether an unaccepted settlement offer can render a case moot. Compare, *e.g.*, *Diaz v. First Am. Home Buyers Protection Corp.*, 732 F.3d 948, 950 (9th Cir. 2013) (no), with *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 370 (4th Cir. 2012) (yes). The Supreme Court granted certiorari in *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013), to resolve this split but ultimately decided that case on narrower grounds. The circuit split remains, but there are reasons to question our approach to the problem. See *id.* at 1533–34 (Kagan, J., dissenting). Scott does not challenge our circuit's view, so we will continue to await a resolution of the split.

possible. *Id.* To hold otherwise would imply that any reasonable settlement offer moots the plaintiff's case or that long-shot claims are moot rather than unlikely to succeed. *Id.* at 432. "That's not the way things work: A bad theory (whether of liability or of damages) does not undermine federal jurisdiction." *Id.*

Westlake did not offer to satisfy Scott's entire demand. Westlake offered to pay only for dialer-generated calls and acknowledged only six such calls, significantly fewer than the twenty or more calls Scott identified in her complaint, translating to a difference of at least $21,000 in damages due. That is not an unconditional offer to pay the plaintiff the entirety of her demand. Whether a call is "dialer-generated" within the meaning of the TCPA is a hotly contested issue on the merits. See, *e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 950 (9th Cir. 2009) (reversing grant of summary judgment because of factual dispute on whether defendants had used automated dialer in violation of TCPA). Westlake's offer amounted to telling Scott it was willing to pay for all calls that in its estimation (or perhaps that of a court) violated the TCPA. Under the sound reasoning of *Gates v. Towery*, such an offer could not render Scott's case moot.

Westlake argues, however, that *Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011), requires affirmance. We disagree. In *Damasco*, the defendant offered to pay the plaintiff maximum statutory damages "for each text message received from Clearwire." *Id.* at 893. That offer gave the plaintiff everything he requested because it offered to pay the plaintiff for every message he had received from the defendant. All that remained to be done was to count the number of calls and write

the plaintiff a check. Here, by contrast, Westlake offered to pay for each *dialer-generated* call Scott received, and disputed the number of qualifying calls. The fact that Westlake was willing to pay for "each and every" such message does not change the fact that Westlake was offering to pay only the amount it felt might be due. That was not enough to moot Scott's case.

Our conclusion is bolstered by the district court's order to conduct post-judgment discovery to determine how many qualifying calls Scott received. Post-judgment discovery is unusual to begin with. The idea of post-judgment discovery into a disputed issue on the merits of the case to figure out how to apply an unaccepted settlement offer that supposedly rendered the case moot is difficult to grasp. Where further discovery relevant to the merits and possibly even future rulings are needed to determine how much the defendant actually offered to pay, a live controversy still exists between the parties.

The district court concluded, and Westlake argues, that *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994), authorized the court to retain jurisdiction over the post-judgment discovery proceedings. Because we conclude that Scott's case is not moot, we need not decide whether *Kokkonen* authorized this procedure. We note, however, that *Kokkonen* involved a settlement agreement rather than an unaccepted settlement offer, and that the parties' post-judgment dispute did not involve the merits of the underlying case. *Kokkonen*, 511 U.S. at 376–77. Supervising post-judgment discovery into the merits of the underlying case is quite different from determining, as in *Kokkonen*, whether one party must return a file to the other. *Id.* at 377. The difference between the disagree-

ment in *Kokkonen* and the disagreement in this case is a further indication that Scott's case is not moot.

One somewhat sticky puzzle remains to be resolved: how should the district court proceed on remand, given that discovery is already taking place as part of the post-judgment proceedings? We conclude that the district court should simply revive the original case and convert the post-judgment discovery into discovery on the merits of the underlying case, including full discovery if appropriate. Scott is also free to renew her motion for class certification, which was denied when her case was declared moot.

We REVERSE the judgment dismissing the case as moot and REMAND to the district court for proceedings consistent with this opinion.