In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 12-3504

SCOTT MCMAHON, individually and on
behalf of a class,

*Plaintiff-Appellant,*

*v.*

LVNV FUNDING, LLC, *et al.*,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 1410 — **Charles P. Kocoras**, *Judge.*

_____

No. 13-2030

JUANITA DELGADO, individually and on
behalf of a class,

*Plaintiff-Appellee,*

*v.*

CAPITAL MANAGEMENT SERVICES, LP, *et al.*,

*Defendants-Appellants.*

_____

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:12-cv-4057-SLD-JAG — **Sara Darrow**, *Judge*.

_____

ARGUED SEPTEMBER 25, 2013 — DECIDED MARCH 11, 2014

_____

Before WOOD, *Chief Judge*, and FLAUM and SYKES, *Circuit Judges*.

WOOD, *Chief Judge*. The underlying question presented by these two appeals, which we have consolidated for purposes of an opinion, relates to the circumstances under which a dunning letter for a time-barred debt could mislead an unsophisticated consumer to believe that the debt is enforceable in court, and thereby violate the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* After oral argument in these cases, we held that efforts to collect time-barred debts can violate the statute. See *Phillips v. Asset Acceptance, LLC,* 736 F.3d 1076, 1079 (7th Cir. 2013). In *Delgado,* we face a variant on that issue; it concerns the effect of a settlement offer in the dunning letter. *McMahon* raises a question of possible mootness in the wake of the defendants' effort to buy out the putative named plaintiff. We conclude that *McMahon* is not moot, and thus that the district court's dismissal of the action must be reversed. In *Delgado,* which is before this court on an interlocutory appeal based on 28 U.S.C. § 1292(b), the district court denied the defendants' motion to dismiss. We affirm that decision.

## I.      Facts

### A. *McMahon*

In 1997, Scott McMahon received a bill from a utility company, Nicor Gas. Apparently McMahon did not pay that bill. Fourteen years later, in September 2011, defendant LVNV Funding, LLC, purchased the debt, which by then was for $584.98. LVNV retained a collection agency, Tate & Kirlin (Tate), to pursue payment. (Although there are several defendants, we refer to them as LVNV for ease of exposition.) Tate sent the letter that sparked this lawsuit to McMahon on December 19, 2011. At the top of the letter, information about the immediate creditor (LVNV), the previous creditor (Nicor Gas), and the total due ($584.98) appeared. The text of the letter read as follows:

> This account has been listed with our office for collection. This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.
>
> **An Opportunity:** We are pleased to extend to you an offer to settle your account in full for $233.99. This represents a savings of 60% off your balance.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office

> will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office [*sic*] in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

At the bottom of the page there was a tear-off payment coupon, which the recipient was instructed to detach and return with his payment. The letter said nothing about when the debt was incurred, and it contained no hint that the four-year statute of limitations applicable in Illinois had long since expired. See 810 ILCS 5/2-725.

On receiving the letter, McMahon responded to Tate with a request for verification, stating that "we can settle this quickly" once the debt was verified. In January 2012, one of LVNV's affiliates (defendant Resurgent) replied to McMahon. It gave him some details, including the fact that LVNV now owned the debt, that LVNV had acquired the debt from Nicor on September 23, 2011, and that the amount was $584.98. Resurgent kept mum, however, about the advanced age of the debt—a detail that would have alerted either McMahon or his lawyer to the fact that he had an iron-clad defense under the statute of limitations.

The next month, McMahon filed a suit under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692e, 1692f, on behalf of himself and a class. On July 5, 2012, the district court issued an order dismissing McMahon's class-wide allegations, but denying LVNV's motion to dismiss his individual claims. McMahon promptly filed a motion to reconsider. In an order dated August 13, 2012, the court denied

the motion to reconsider "our earlier dismissal of his class-wide claims," but it granted him leave to amend his class complaint. Hours later, LVNV's attorney sent a fax to McMahon's attorney offering to settle the case. In exchange for McMahon's dropping his class claims, LVNV offered to pay McMahon (1) statutory damages in the amount of $1,000 to satisfy his remaining individual claim under the FDCPA, (2) costs incurred on his individual claim, (3) a reasonable attorney's fee, and (4) "any other reasonable relief" in the event the court concluded that more was necessary. McMahon did not respond to the offer. Instead, two days later, he filed an amended class complaint along with an amended motion for class certification. LVNV responded with the same settlement offer, but McMahon again ignored it.

At that point, LVNV moved for dismissal of the entire case under Federal Rule of Civil Procedure 12(b)(1). LVNV took the position that its settlement offer rendered McMahon's individual claim moot, and that this made McMahon an inadequate representative of the proposed class. The district court found that the August 13 fax offered McMahon complete recovery for his individual claim, that it was made prior to class certification, and thus that it had the effect of depriving McMahon of a personal stake in the litigation. With no controversy meeting the requirements of Article III before it, the court granted LVNV's motion to dismiss for want of jurisdiction. In his appeal, McMahon contests both the finding that LVNV's settlement offer mooted the case and the original dismissal of the class claims under the FDCPA.

### B. *Delgado*

On February 7, 2012, defendant Capital Management Services LP (CMS) sent a debt-collection letter to plaintiff

Juanita Delgado, another resident of Illinois. The letter stated, in relevant part:

> Dear Juanita Delgado,
>
> This company has been engaged by RESURGENT CAPITAL SERVICES, LP, the servicer of the account, to resolve your delinquent debt of $2404.13. Please submit your payment and make your check or money order payable to Capital Management Services, LP, to the above address.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such verification or judgment. If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different than the current creditor.
>
> Capital Management Services, LP is authorized to accept less than the full balance due as settlement of the above account. The settlement amount of $721.24, which represents 30% of the amount presently owed, is due in our office no later than forty-five (45) days after receiving

> this notice. We are not obligated to renew this offer.
>
> For your convenience, this settlement may be made online at: www.cms-trans.com. For other payment options, please contact Capital Management Services … .
>
> This is an attempt to collect a debt; any information obtained will be used for that purpose. This communication is from a debt collector.

The letter did not say that CMS was time-barred from enforcing the debt under Illinois's statute of limitations, nor did it disclose when the debt was incurred. In fact, Delgado's letter was about an eight-year-old debt, which meant that any collection action would have been barred by Illinois's statute of limitations, if the debtor were savvy enough to raise the point. The letter also instructed the recipient to "detach and return [the] top portion with payment."

Using the same lawyer as McMahon, Delgado filed a complaint under the FDCPA charging that CMS violated that statute by sending a dunning letter on a time-barred debt and including an offer of "settlement" which, if accepted, would in fact make the debtor worse off. CMS filed a motion to dismiss for failure to state a claim. In considering that motion, the district court decided that it was appropriate to give *Skidmore* deference to the views of the Federal Trade Commission, the Consumer Financial Protection Bureau, the Federal Deposit Insurance Corporation, the Federal Reserve Board, and the Office of the Comptroller of the Currency. See *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). As those agencies

had argued in other cases, the court held that when "collecting on a time barred debt a debt collector must inform the consumer that (1) the collector cannot sue to collect the debt and (2) providing a partial payment would revive the collector's ability to sue to collect the balance." The court also found the reference in Delgado's letter of a possible "settlement" of the debt to be deceptive, because it implied that a legally enforceable obligation to pay the debt existed. CMS filed a motion under 28 U.S.C. § 1292(b) for immediate appeal, given the importance of the issues. This court accepted the appeal on May 8, 2013. Delgado's request for class certification is still before the district court, which has suspended proceedings pending the outcome of this appeal.

## II.     District Court Decisions

In reaching their respective conclusions, both district courts noted that at least the Third and Eighth Circuits have found that sending dunning letters for time-barred debts does not violate the FDCPA unless the letter is accompanied by a threat of litigation. See *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 33 (3d Cir. 2011) (plaintiff's FDCPA claim regarding the attempt to collect a time-barred debt "hinges on whether [the dunning] letter threatened litigation"); *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir. 2001) ("[I]n the absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid.").

The district courts acknowledged that several federal agencies do not agree with the Third and Eighth Circuits. For example, the FTC has found that nondisclosure of the fact that a debt is time-barred might deceive a consumer in

at least two ways: first, because most consumers do not know or understand their legal rights with respect to the collection of time-barred debt, attempts to collect on such debt may create a misleading impression that the consumer has no defense to a lawsuit; and second, consumers often do not know that in many states the making of a partial payment on a stale debt actually revives the entire debt even if it was otherwise time-barred. Given the potential for confusion, and to avoid creating a misleading impression, the FTC recommended that if a collector knows or should know that it is collecting on a time-barred debt, it must inform the consumer that (1) the collector cannot sue to collect the debt, and (2) providing partial payment would revive the collector's ability to sue to collect the remaining balance. FED. TRADE COMM'N, THE STRUCTURE AND PRACTICE OF THE DEBT BUYING INDUSTRY 47 (2013) (FTC Report 2013). Both district courts were also aware that the FTC had secured a consent decree with Asset Acceptance, LLC. See *United States v. Asset Acceptance, LLC,* No. 8:12-cv-182-T-27EAJ (M.D. Fla. 2012). That decree requires the company to disclose to consumers whether it knows or believes that a debt was incurred outside the limitations period, using this language: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it."

In *Delgado*, the district court found the FTC's position persuasive and thus denied CMS's motion to dismiss. It held that, for debts that have aged beyond the period of limitations, a dunning letter that contains no disclosure about when the debt was incurred, the implications of that date for its enforceability, and the consequences of making a payment on it, may mislead and deceive unsophisticated consumers. As for the specific letter Delgado received, which

included an offer to "settle," the district court found it plausible that an unsophisticated consumer could be deceived into believing that the offer of settlement implies a legally enforceable obligation to pay the debt.

In *McMahon*, the district court took a different turn. After providing its views on the merits in the interim order dismissing McMahon's class allegations, refusing to dismiss his individual claim, and giving him leave to replead, the court dismissed the entire action for want of jurisdiction. As we noted earlier, hours after the district court denied a motion for reconsideration of its order dismissing the class claims, LVNV sent a fax to McMahon with an offer to settle his individual claim. That offer, LVNV argued, rendered McMahon's individual claim moot, and at the same time made him an inadequate representative of the class. The district court agreed with that analysis and so dismissed the case for want of a proper Article III case or controversy.

Although the district court's order in *Delgado* was interlocutory, the case is properly before us under 28 U.S.C. § 1292(b). The judgment in *McMahon* was a final judgment, and so our jurisdiction over it is secure under 28 U.S.C. § 1291. On May 28, 2013, we invited the FTC to file a brief as *amicus curiae* in *Delgado*. The FTC accepted our invitation and filed a brief jointly with the Consumer Financial Protection Bureau (CFPB). We appreciate their willingness to assist the court.

### III.    Mootness

Even though possible mootness haunts only *McMahon*, we think it best to discuss this point before turning to the issues common to the two appeals. The pertinent cases from

this court include *Scott v. Westlake Servs. LLC*, 740 F.3d 1124 (7th Cir. 2014), *Espenscheid v. Directsat USA, LLC,* 688 F.3d 872 (7th Cir. 2012), *Damasco v. Clearwire Corp.,* 662 F.3d 891 (7th Cir. 2011), and *Rand v. Monsanto Co.,* 926 F.2d 596 (7th Cir. 1991). Ultimately, however, the governing principles come from the Supreme Court's decisions in *Genesis Healthcare Corp. v. Symczyk,* 133 S. Ct. 1523 (2013), *U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388 (1980), and *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper,* 445 U.S. 326 (1980).

*Symczyk* was a case brought by an individual plaintiff under the Fair Labor Standards Act. She asserted that her employer had not counted her work hours properly, and that this had led to a violation of the Act's overtime provisions. She sought to bring the case as a collective action under the FLSA, which provides for a specialized opt-in type of aggregate litigation. At a time when no other employee of the company had joined the case, the employer presented an offer of settlement for full statutory damages in the amount of $7500, plus "such reasonable attorneys' fees, costs and expenses as the Court may determine." The offer said that it would be withdrawn if it was not accepted within ten days.

Plaintiff did not accept the offer, but the district court concluded that her claim was moot nevertheless, because the employer had offered her everything she could possibly receive as an individual. The Third Circuit reversed, but the Supreme Court held that the district court had been correct. A number of considerations led to this conclusion. First, the Court stressed that all agreed that the employer's offer was complete. 133 S. Ct. at 1528. In addition, everyone proceeded on the assumption that Symczyk's individual claim was moot. *Id.* at 1529. The Court held that, in the absence of a

cross-appeal, plaintiff had waived any chance to revisit that pivotal question. Furthermore, the Court rejected Symczyk's effort to rely on precedents from Federal Rule of Civil Procedure 23, which it described as "fundamentally different from collective actions under the FLSA." *Id.*

The *Symczyk* Court distinguished *Geraghty*, which had held that a Rule 23 class has a status separate from that of the named plaintiff, and that a live controversy sometimes continues to exist even after the named plaintiff's claim becomes moot (as there), and even if class certification has been denied. The Court attached importance to the fact that the named plaintiff's claim remained live at the time the district court denied class certification. See *Symczyk,* 133 S. Ct. at 1530 (discussing *Geraghty,* 445 U.S. at 404, 407 & n.11).

The grounds on which the *Symczyk* Court distinguished *Roper* are even more pertinent to our case. In *Roper,* the putative class representatives' claims became moot after the district court denied class certification. As here, the defendant had offered judgment for "the maximum recoverable amount of damages, in addition to interest and court costs." Symczyk, 133 S. Ct. at 1531–32 (discussing *Roper,* 445 U.S. at 329–30). Nonetheless, "under the particular circumstances of that case, the named plaintiffs possessed an ongoing, personal economic stake in the substantive controversy—namely, to shift a portion of attorney's fees and expenses to successful class litigants." *Id*. at 1532. Against that backdrop, *Roper* "observe[d] that allowing defendants to pick off party plaintiffs before an affirmative ruling was achieved would frustrate the objectives of class actions." *Id.* (quoting *Roper,* 445 U.S. at 339) (internal quotation marks omitted). Thus, *Roper* turned on the plaintiffs' continuing personal economic

stake in the litigation even after the offer of judgment, and the unique significance of certification decisions in Rule 23 class actions.

Although *Symczyk* lay in the future at the time this court decided *Rand v. Monsanto, supra,* our decision anticipated the lines the Court was later to draw. In *Rand,* after the district court denied class certification, the defendant offered a full settlement to Rand (his full alleged damages plus costs of suit). 926 F.2d at 597. We recognized that this rendered Rand's individual claim moot, but that under *Roper* "the dispute about class certification survives." *Id.* at 598. The district court had thought Rand was an inadequate representative for the class not because of the offer of settlement, but because Rand had not expressed a willingness to bear the full costs of the litigation. That, we said, demanded too much of Rand, and so we remanded for the district court to take another look at Rand's suitability to act as class representative.

*Espenscheid* was an FLSA case in which the district court ultimately denied class certification (for some supplemental state claims) and the defendants then settled with the named plaintiffs. Later, the plaintiffs appealed the denial of class certification, and the defendant fired back that the appeal had to be dismissed because plaintiffs no longer had any live interest in the case. We rejected that argument, however, because a provision of the settlement agreement stated that plaintiffs were seeking an incentive award for their services as class representatives. 688 F.3d at 874. We pointed out also that a class representative assumes a risk of liability for the defendants' costs or even, in some instances, attorneys' fees. *Id.* at 877. Finally, we saw no reason not to extend these

holdings to the FLSA collective action part of the case. We therefore denied the motion to dismiss the appeal for want of jurisdiction.

In *Damasco,* we clarified an important point about the timing of class-certification motions and efforts to pick off a putative class representative. *Damasco* reconfirmed our circuit's rule under which a defendant can render moot a possible class action by offering to settle for the full amount of the plaintiff's demands *before* the plaintiff files a motion for class certification. 662 F.3d at 896; see *Holstein v. City of Chicago,* 29 F.3d 1145, 1147 (7th Cir. 1994). (Other circuits use a more flexible rule, under which the would-be representative need only file for class certification without undue delay after receiving an offer to settle. See *Pitts v. Terrible Herbst, Inc.,* 653 F.3d 1081, 1091–92 (9th Cir. 2011); *Lucero v. Bureau of Collection Recovery, Inc.,* 639 F.3d 1239, 1250–51 (10th Cir. 2011); *Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 920–21 (5th Cir. 2008); *Weiss v. Regal Collections,* 385 F.3d 337, 348 (3d Cir. 2004). We do not need to resolve this difference of opinion in the present case.) We noted in *Damasco* that there is a simple solution for a putative class representative who wishes to avoid mootness or buy-off: move to certify the class at the same time that the complaint is filed. 662 F.3d at 896.

These threads came together recently in *Scott,* a case in which the plaintiff filed suit on behalf of herself and others similarly situated over alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227. Before Scott moved to certify a plaintiff class, the defendant offered to pay her the full statutory damages for any calls that violated the statute. She declined the offer, but the district court held that the case had become moot, and so it dismissed, just as

the district court did in McMahon's case. We noted (consistently with *Symczyk*) that *Damasco* holds that an unaccepted settlement offer "can render the plaintiff's case moot *if it gives the plaintiff everything she requested."* 2014 WL 250251 at *2 (emphasis added). The problem with the offer in *Scott* was that it did not meet the condition in the language we have italicized. The defendant there, rather than offering to satisfy Scott's entire demand, reserved the right to challenge which unwanted telephone calls gave rise to penalties. The district court was engaged in an odd form of post-judgment discovery to determine how many qualifying calls existed. That was not enough, we held, to constitute a full settlement offer, and thus Scott's individual case was not moot.

Applying these principles to McMahon's case is straightforward. McMahon's original complaint asserted both individual and class claims. The district court's order of July 5, 2012, dismissed the class claims under Federal Rule of Civil Procedure 12(b)(6), not because of any problem with McMahon's ability to represent the class, but for substantive reasons. Indeed, McMahon's individual claims survived that ruling. McMahon sought reconsideration of the class ruling, but on August 13, 2012, the court denied that motion; at the same time, it expressly granted McMahon permission to amend and to allege narrower class claims. Two hours later on August 13, LVNV tried to pick off McMahon's individual claim with an offer of settlement. The offer, however, was no more a full resolution of the matter than was the offer in *Scott* or *Espenscheid*. It required McMahon to accept $1,000 for all damages and individual claims against all the defendants; it offered costs and attorneys' fees related to his individual claims; it insisted that he dismiss the class claims without prejudice; it demanded that he refrain from appeal-

ing the denial of class certification; and, most importantly, it promised only to give any other "reasonable" relief that the court thought necessary. (This indicates that LVNV was reserving the right to object to any additional relief that it deemed unreasonable.) McMahon did not accept the offer. Instead, he filed an amended complaint and an amended motion for class certification (in accordance with *Damasco*) on August 15, 2012.

The district court took the position that the offer of settlement squeaked in under the wire, just before McMahon moved for class certification. But the motion on August 15 was an *amended* motion. McMahon already had brought his class claims before the district court, which had stated in so many words that the litigation was still ongoing when it gave him permission to amend. McMahon was diligent in pursuing his class claims: he filed his amended complaint and his new motion to certify the class just two days after the court gave him leave to do so. Had McMahon tried to appeal from the original denial of class certification, even assuming that LVNV's offer was comprehensive enough to moot his case, he would have been in exactly the same position as the *Roper* plaintiff. We conclude, therefore, that McMahon's decision to reject LVNV's settlement offer did not moot his interest in the case for purposes of his ability to serve as a class representative.

## IV.    FDCPA Issues

Turning to the merits, we must consider how the FDCPA applies to the dunning letters that both McMahon and Delgado received. The Act prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section

1692e furnishes a nonexclusive list of prohibited practices, including the following: false representation of the character, amount, or legal status of any debt, § 1692e(2)(A); threat to take any action that cannot legally be taken, § 1692e(5); and use of any false representation or deceptive means to collect or attempt to collect any debt, § 1692e(10). Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." "[I]n deciding whether … a representation made in a dunning letter is misleading the court asks whether a person of modest education and limited commercial savvy would be likely to be deceived." *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 774 (7th Cir. 2007). The court views the letter through the perspective of an "unsophisticated consumer." *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012). This standard applies to claims under both § 1692e and § 1692f. *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 997 (7th Cir. 2003).

Whether a dunning letter is confusing is a question of fact. *Evory*, 505 F.3d at 776. Dismissal is appropriate only when "it is 'apparent from a reading of the letter that not even a significant fraction of the population would be misled by it.'" *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012) (quoting *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004)). "[A] letter may confuse even though it is not internally contradictory. Unsophisticated readers may require more explanation than do federal judges; what seems pellucid to a judge, a legally sophisticated reader, may be opaque to someone whose formal education ended after sixth grade." *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999). Recognizing the distinction between what may confuse a federal judge and an unsophisticated consumer is important because the intended

recipients of dunning letters span the entire range of abilities. We have therefore cautioned against reliance "on our intuitions." *Evory*, 505 F.3d at 776.

Given this standard and the well-reasoned position put forth by the FTC and CFPB, we find that the district court in *Delgado* was correct in denying defendants' motion to dismiss. The *McMahon* court will need to take a fresh look at the class allegations in that case, even if it concludes that McMahon himself (apart from his interest as class representative) cannot go forward. We do not hold that it is automatically improper for a debt collector to seek repayment of time-barred debts; some people might consider full debt repayment a moral obligation, even though the legal remedy for the debt has been extinguished. But, as we held in *Phillips, supra,* if the debt collector uses language in its dunning letter that would mislead an unsophisticated consumer into believing that the debt is legally enforceable, regardless of whether the letter actually threatens litigation (the requirement the Third and Eighth Circuits added to the mix), the collector has violated the FDCPA. Because it is plausible that an unsophisticated consumer would believe a letter that offers to "settle" a debt implies that the debt is legally enforceable, it was correct in *Delgado* to decline to dismiss the action at this stage, and incorrect to dismiss the class allegations in *McMahon*.

The proposition that a debt collector violates the FDCPA when it misleads an unsophisticated consumer to believe a time-barred debt is legally enforceable, regardless of whether litigation is threatened, is straightforward under the statute. Section 1692e(2)(A) specifically prohibits the false representation of the character or legal status of any debt. Wheth-

er a debt is legally enforceable is a central fact about the character and legal status of that debt. A misrepresentation about that fact thus violates the FDCPA. Matters may be even worse if the debt collector adds a threat of litigation, see 15 U.S.C. § 1692e(5), but such a threat is not a necessary element of a claim.

We recognize that this interpretation conflicts with that of the Eighth and Third Circuits. See *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 33 (3d Cir. 2011); *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir. 2001). With respect, however, we have concluded that the statute cannot bear the reading that those courts have given it.[1] In their view, if a dunning letter on a time-barred debt states that the collector could sue but promised not to, that letter would not violate the FDCPA, since no litigation was actually threatened (and indeed was expressly rejected). On its face, that may seem reasonable, but closer examination reveals why it is not. The plain language of the FDCPA prohibits not only threatening to take actions that the collector cannot take, but also the use of any false, deceptive, or misleading representation, including those about the character or legal status of any debt. If a debt collector stated that it *could* sue on a time-barred debt but was promising to forbear, that statement would be a false representation about the legal status of that debt.

---

[1] Because this opinion creates a conflict in the circuits by adopting the position of the responsible agencies, we have circulated it to the full court under Circuit Rule 40(e). No judge in regular active service wishes to hear the case *en banc*.

In any event, the case before us is nowhere near that line. Neither LVNV nor CMS gave a hint that the debts that they were trying to collect were vulnerable to an ironclad limitations defense. An unsophisticated consumer who read the dunning letter Delgado or McMahon received could have been led to believe that her debt was legally enforceable. In other words, the letters misrepresented the legal status of the debts, in violation of the FDCPA. The courts in *Huertas* and *Freyermuth* do not explain why such a misrepresentation about the legal status of the debt, wholly apart from a threat of litigation, does not violate the Act. The fact that both Delgado and McMahon's letters contained an offer of settlement makes things worse, not better, since a gullible consumer who made a partial payment would inadvertently have reset the limitations period and made herself vulnerable to a suit on the full amount. That is why those offers only reinforced the misleading impression that the debt was legally enforceable.

Relying in part on the district court opinion in *Rice v. Midland Credit Mgmt., Inc.*, 933 F. Supp. 2d 1040 (N.D. Ill. 2013), defendants argue that there is nothing misleading about the use of the word "settle" in this context. The court there wrote that "[b]ecause an unsophisticated consumer is not a 'dimwit' and is capable of making 'basic logical inferences,' it is not misleading to truthfully state in a letter that a debt is owed and that paying it would settle the debtor's account. That is, after all, true. If a debtor who receives such a letter jumps to the conclusion that he may be sued if he does not pay, that inference is not attributable to the letter." Id. At 1048; see also *Crawford v. Vision Fin. Corp.*, 2012 WL 5383280, at *3 (N.D. Ill. Nov. 1, 2012) (opining that "an unsophisticated debtor would likely interpret the term 'settle' in a debt-

collection letter to mean only the 'settlement' of a debt, not the settlement of a lawsuit"). Neither the FTC nor the CFPB take such a sanguine view of the abilities of the typical recipient of dunning letters. They have found to the contrary that most consumers do not understand their legal rights with respect to time-barred debts. FED. TRADE COMM'N, REPAIRING A BROKEN SYSTEM: PROTECTING CONSUMERS IN DEBT COLLECTION LITIGATION AND ARBITRATION 26–27 (2010).

We are inclined to defer to the agencies' empirical research and expertise. If a consumer received an "offer for settlement" and searched on Google to see what is meant by "settlement," she might find the Wikipedia entry for "settlement offer." *Settlement offer*, WIKIPEDIA, (Mar. 10, 2014 at 4:06 pm), http://en.wikipedia.org/wiki/Settlement_offer. There she would learn that the term "offer to settle" is "used in a civil lawsuit to describe a communication from one party to the other suggesting a settlement—an agreement to end the lawsuit before a judgment is rendered."

Our reasoning in *Evory* supports this understanding. There we considered whether a settlement offer contained in a dunning letter is *per se* unlawful under § 1692f. The concern was that unsophisticated consumers receiving letters with language like "Act now and receive a settlement of 25% off your current balance!" would believe that if they did not pay by the deadline, they would not have a later chance to settle for less than the full amount. Such a belief would often have been ill-founded, because "debt collectors, who naturally are averse to instituting actual collection proceedings for the typically modest sums involved in the consumer debt collection business, frequently renew their offers if the consumer fails to accept the initial offer." Evory, 505 F.3d at 775.

The recipients of the letters, however, would believe that if they did not immediately accept the offer, they would face legal proceedings where the full amount would be demanded. The risk here is similar: a settlement offer on a time-barred debt implies that the creditor could successfully sue on the debt. If unsophisticated consumers believe either that the settlement offer is their chance to avoid court proceedings where they would be defenseless, or if they believe that the debt is legally enforceable at all, they have been misled, and the debt collector has violated the FDCPA.

Our decision today does not require debt collectors to conduct additional research. If a debt collector does not know whether the debt submitted for collection is time-barred, it would be easy to include general language about that possibility. That said, we find it unlikely that debt owners lack knowledge about the age of the debts they are attempting to collect. If the debt collector is the original creditor, it will know the relevant dates. If the collector is a third-party collecting on behalf of the original creditor, it should easily be able to get that information at the time the file is assigned by the original creditor on whose behalf it is acting. If the collector has purchased the debt from the original creditor, we know from the FTC that such buyers pay different amounts for debts depending on the age of the debt and the number of previous attempts to collect it, in which case whether the debt is time-barred should be known. See FTC Report 2013 at 21. The FTC's study found that "debt buyers paid on average 3.1 cents per dollar of debt for debts that were 3 to 6 years old and 2.2 cents per dollar of debt for debts that were 6 to 15 years old compared to 7.9 cents per dollar for debts less than 3 years old. Finally, debt buyers paid effectively nothing for accounts that were older than

fifteen years." *Id.* at 23–24. Finally, if the collector is a third party acting on behalf of a debt buyer, it should be able to get the relevant information from the party on whose behalf it is acting.

## V.    Conclusion

In summary, we conclude that an unsophisticated consumer could be misled by a dunning letter for a time-barred debt, especially a letter that uses the term "settle" or "settlement." We thus AFFIRM the district court's denial of defendant's motion to dismiss in *Delgado*. In *McMahon*, we REVERSE and REMAND for further proceedings consistent with this opinion.