In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3017

IN RE: CHARLES EDWARD TAYLOR, II,

*Debtor-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:13-CV-7743 — **Edmond E. Chang**, *Judge.*

ARGUED APRIL 13, 2015 — DECIDED JULY 20, 2015

Before WOOD, *Chief Judge*, ROVNER, *Circuit Judge*, and
SPRINGMANN, *District Judge.*[*]

SPRINGMANN, *District Judge.* In 2005, the brother of Debtor-
Appellant Charles Edward Taylor, II, died in a boating
accident. Patricia Caiarelli, the decedent's ex-spouse and
guardian of their minor child, sought a declaration in Washing-
ton state court that the child was entitled to assets of the
decedent's estate that were distributed to Taylor. The state
court entered judgment against Taylor for over $1.4 million.
The decedent's estate, which was named judgment creditor,
assigned the judgment to Caiarelli. Taylor responded by

---

[*] Of the Northern District of Indiana, sitting by designation.

seeking a declaration in probate court that the assignment was void. Prior to a resolution, however, Taylor filed for bankruptcy under Chapter 11. It's fair to say that, at this point, things get complicated.

Three days after the bankruptcy filing, the probate judge sent a letter to Caiarelli and Taylor (and their attorneys) acknowledging the bankruptcy filing and the resulting automatic stay of Taylor's lawsuit. The letter listed several matters the court planned to address once the case resumed. As to the assignment, the judge opined that although "[the] assignment may be properly" effectuated, "[i]t appears … that several steps were skipped at the time of assignment." *See* R. 70-1, Judge Rogers Letter (April 26, 2012) at 263. The probate judge confirmed that the letter is "not an Order." *Id.* at 262.

Notwithstanding the letter, Caiarelli initiated an adversary proceeding in the bankruptcy court, objecting to a discharge of the judgment under 11 U.S.C. § 523(a). Taylor moved to dismiss the objection, arguing that Caiarelli lacked standing to enforce the judgment. To address standing, Caiarelli—represented by her attorneys, Madeline Gauthier and Charles Kimbrough—returned to probate court and filed a motion to ratify the assignment. But the plan backfired. Taylor submitted to the bankruptcy court both the letter and the motion to ratify as proof that Caiarelli lacked standing. While noting that the letter provided no definitive answer as to the validity of the assignment, the bankruptcy court dismissed the adversary proceeding and found that, as an evidentiary matter, Caiarelli failed to establish standing. *See* R. 70-2, Dismissal Order Hr'g Tr. (Mar. 19, 2013) at 145–46. Upon dismissal, the judgment was discharged, and Taylor's creditors

were enjoined from collecting on the judgment by operation of 11 U.S.C. § 524(a)(2) and the bankruptcy plan of reorganization.

Despite the dismissal order, Caiarelli returned to probate court and pressed forward with her motion to ratify. After conducting a hearing, the probate court granted the motion, finding that the assignment "met all the requirements of both law and local probate court custom" and that "[a]ll concerns regarding the Assignment raised by [the letter] have been addressed." *See* R. 70-1, Ratification Order, *In re Taylor*, No. 06-4-02116-6 (Apr. 2, 2013) at 41–42. The probate court concluded that the assignment "is valid, and has been valid since its original signing." *Id.* at 42.

Taylor responded again, this time by seeking a civil contempt order in the bankruptcy court. Taylor alleged that Caiarelli and her attorneys violated both the statutory discharge and plan injunctions by returning to the probate court. The bankruptcy court granted Taylor's motion and entered a civil contempt order against Caiarelli and her attorneys, holding that they violated the injunctions by prosecuting and obtaining the ratification order for the purpose of collecting on the discharged judgment; and that the ratification order constituted an impermissible collateral attack, rendering it void *ab initio*.[1] The bankruptcy court then issued a damages order and judgment for $165,662.36 in attorney's

---

[1] After the issuance of the contempt order, the ratification order was vacated. *See* R. 40-1, Stipulation and Order (Aug. 27, 2013).

fees, to be paid jointly and severally by Caiarelli and her attorneys.

Caiarelli, Gauthier and Kimbrough (collectively, the Appellees in this Court) appealed all three orders—the contempt order, the damages order, and the judgment—to the United States District Court. The Appellees raised three issues: (1) whether, as a matter of law, the ratification order violated the statutory discharge injunction and/or the plan injunction; (2) whether the bankruptcy court abused its discretion by entering the civil contempt order; and (3) whether the bankruptcy court abused its discretion by ordering $165,662.36 in attorney's fees.

While the appeal was pending, Taylor notified the district court that he reached a settlement with Gauthier and Kimbrough's legal malpractice insurance carrier. Under the purported settlement, Taylor would receive $140,000 in satisfaction for the judgment, and in turn, Taylor would file a satisfaction and release of the judgment, along with a motion to vacate all three orders challenged on appeal. However, both Gauthier and Caiarelli denied that a full settlement had been reached.

Notwithstanding the disagreement, Taylor moved to dismiss the appeal as moot, arguing that the purported settlement provides all relief sought by the Appellees. The district court then asked Taylor to seek an indicative ruling from the bankruptcy court as to whether it would grant a motion to vacate in light of the purported settlement. The bankruptcy court determined that vacatur would be approved if the parties returned to the court "arm [in] arm," in favor of

settlement.[2] R. 36-1, Appellees' Exh. 1, Indicative Ruling Hr'g Tr. (Apr. 8, 2014) at 5. The district court then issued an order denying Taylor's motion to dismiss; and in a separate order, reversed the contempt order, damages order, and judgment, finding that the Appellees did not violate the statutory discharge or plan injunctions, and did not impermissibly attack a federal judgment. Taylor now appeals.

## I. DISCUSSION

On appeal, we apply the same standard as the district court, reviewing a finding of civil contempt for abuse of discretion. *Ohr ex rel. NLRB v. Latino Exp., Inc.*, 776 F.3d 469, 474 (7th Cir. 2015). A finding of civil contempt will only be reversed if it "depends on faulty legal premises [or] clearly erroneous factual findings." *Harrell ex rel. NLRB v. Am. Red Cross, Heart of Am. Blood Servs. Region*, 714 F.3d 553, 556 (7th Cir. 2013). The legal conclusions of both the bankruptcy court and the district

---

[2]  The bankruptcy judge stated the following:

> [M]y indicative ruling would be that if the parties upstairs settle this, and they come in arm [in] arm, and they want me to—as a condition to effectuating the settlement, to vacate the contempt order, I'm perfectly happy to do that . . . . I just want to make clear that in vacating it, if we had Ms. Gauthier, for example, come back before me, and if she says that there is not a settlement agreement, that could have some impact on it. . . . If what is holding up the settlement is the existence of the contempt order, I will—I'm indicating that I would, in order to effectuate that settlement, be happy to vacate the contempt order.

Indicative Ruling Hr'g Tr. at 5–7, 10.

court are reviewed de novo. *In re Mississippi Valley Livestock, Inc.*, 745 F.3d 299, 302 (7th Cir. 2014).

Taylor presents three issues on appeal: whether the district court erred (1) by refusing to dismiss the appeal as moot; (2) by determining that the ratification order did not violate the statutory discharge and/or plan injunctions; and (3) by determining that the ratification order did not constitute an impermissible collateral attack on a federal judgment. We address each issue in turn, and in doing so, adopt the sound reasoning of the district court.

### A. Mootness

The jurisdiction of Federal courts is limited to actual "cases" and "controversies." U.S. Const. art. III. A case is moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (internal quotation marks and citation omitted). If the possibility of partial relief exists, the appeal is not moot. *In re Envirodyne Indus., Inc.*, 29 F.3d 301, 304 (7th Cir. 1994). As such, this Circuit's case law holds that an unaccepted settlement offer will only render a case moot if it "'offers to satisfy the plaintiff's entire demand.'" *Scott v. Westlake Servs. LLC*, 740 F.3d 1124, 1126 (7th Cir. 2014) (citing *Rand v. Monsanto Co.*, 926 F.2d 596, 597–98 (7th Cir. 1991); *see also Damasco v. Clearwire Corp.*, 662 F.3d 891, 895 (7th Cir. 2011). When a party's entire demand is satisfied, "there is no dispute over which to litigate and thus no controversy to resolve." *Scott*, 740 F.3d at 1126 (internal quotation marks omitted).

Here, the purported settlement lacks the consent of all the parties—both Caiarelli and Gauthier continue to withhold their

consent. Nonetheless, Taylor maintains that Caiarelli and Gauthier's consent is unnecessary because, pursuant to the purported settlement, the insurance carrier will pay an agreed amount to Taylor, and then Taylor will move to vacate the contempt order, damages order, and the judgment. And therefore, no further relief may be granted on appeal.

As the district court thoroughly explained, Taylor's argument is flawed. First, according to the bankruptcy judge's indicative ruling, a motion to vacate would only be granted if all the parties—Caiarelli and Gauthier included—returned to the bankruptcy court "arm [in] arm" in favor of settlement. Indicative Ruling Hr'g Tr. at 5. The judge noted that "if we had Ms. Gauthier, for example, come back before me, and if she says that there is not a settlement agreement, that could have some impact on it." *Id.* at 6–7. The record clearly demonstrates that an "arm [in] arm" agreement has eluded the parties thus far, calling into question whether the bankruptcy court would even grant vacatur upon remand. And without vacatur, the challenged orders remain in place.

Second, even if the bankruptcy court did grant vacatur, the purported settlement does not encompass all relief sought by the Appellees—namely, it does not negate the Appellees' stake in reversing the bankruptcy court's dismissal order, and ultimately, the discharge injunction. Again, a settlement offer must provide the plaintiff with complete relief to render a case moot. *Scott*, 740 F.3d at 1126; *see, e.g., Clark Equip. Co. v. Lift Parts Mfg. Co. Inc.*, 972 F.2d 817, 818–19 (7th Cir. 1992) (an appeal of sanctions was mooted because the appellees paid the full amount of the imposed sanctions and reached a settlement as to the underlying case to which the sanctions arose).

Taylor counters that the bankruptcy court's dismissal order which led to the discharge injunction, was not before the district court on appeal. The discharge injunction remains in place, Taylor argues, with or without a ruling on the orders challenged on appeal. While true, Taylor's argument ignores the Appellees' interest in safely returning to the probate court to ratify the assignment. The contempt order, which *was* before the district court on appeal, rendered the ratification order *void ab initio*. For the ratification order to be reentered, the Appellees must file a motion for reentry in the probate court.[3] And with the discharge injunction in place, any such return to the probate court would risk a repeat violation, and a repeat finding of civil contempt. Thus, so long as the discharge injunction remains in place, the purported settlement provides only partial relief, and the underlying dispute to which the challenged orders arose remains unresolved. *See Chafin,* 133 S. Ct. at 1023 (a case is moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.") (internal quotation marks and citation omitted).

As such, the district court correctly determined that the appeal is not moot. Article III poses no bar to our consideration of the remaining claims.

---

[3] Taylor's counsel conceded this point at oral argument: "It's true that … if this Court was to affirm … and the Appellees returned to state court and got the ratification order reentered, which they would have to do since it was vacated … ." Oral Arg. (Apr. 13, 2015).

**B. Violation of Injunctions**

The district court also found that no violation of the statutory discharge or plan injunctions occurred because the ratification motion did not seek to collect, recover, prosecute or satisfy the judgment against Taylor. We agree.

When a debtor confirms a Chapter 11 reorganization plan, the plan "discharges the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1)(A). Discharge in a bankruptcy case "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any [discharged] debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). Similarly, the plan injunction at issue enjoins creditors "from taking any action … to prosecute, collect or in any way to satisfy any claim such creditor may have against the Debtor or the Debtor's property that arose prior to the confirmation of the plan." *See* R. 70, Debtor's First Am. Plan § 11.1 at 135. The bankruptcy court is permitted to "sanction a party for violating the discharge injunction only if the party took some action prohibited by § 524(a)(2)—i.e., an action to collect, recover or offset any [discharged] debt … of the debtor." *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1307 (10th Cir. 2008) (internal quotation marks omitted); *see also In re Hunter*, 970 F.2d 299, 310 (7th Cir. 1992) (explaining that a bankruptcy discharge "precludes *only actions to establish personal liability*." (emphasis in original)).

In seeking ratification, the Appellees were not attempting to modify the judgment against Taylor. They were not even

attempting to modify or cure a deficiency with the *assignment* of the judgment. The ratification order, as spelled out by the probate court, was nothing more than a declaration that the assignment "is valid, and has been valid since its original signing." *See* Ratification Order at 42. The probate court recognized that the order had no impact on the legal status of the parties, and in particular, it had no impact on Taylor's legal obligations in relation to the judgment. With or without the ratification order, Taylor's liability remained the same. *See Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 180 (7th Cir. 1994) ("Permitting a suit to obtain a declaration of liability against a debtor is not equivalent to authorizing the recovery of a barred claim in a bankruptcy proceeding").

Nonetheless, Taylor argues that ratification, albeit not a direct attempt to enforce the judgment, is prohibited because it constitutes an *indirect* attempt at establishing personal liability. According to Taylor, the ratification order would "set in motion a series of events" that may enable collection of the judgment. *See* Appellant's Br. at 40. Taylor's cites a handful of bankruptcy court decisions from other circuits to support this theory. *See, e.g., Torres v. Chase Bank USA, N.A. (In re Torres)*, 367 B.R. 478 (Bankr. S.D.N.Y. 2007); *Atkins v. Martinez (In re Atkins)*, 176 B.R. 998 (Bankr. D. Minn. 1994).

The Appellees readily admit that ratification was sought to lay the groundwork for a Rule 60(b) motion (incorporated under Bankruptcy Rule 9024) to vacate the dismissal order and

reopen the adversary proceeding.[4] But gathering evidence to support a Rule 60(b) motion, in order to argue that a debt is not dischargeable, is not the same as taking action to collect on the debt. When taken to its logical conclusion, Taylor's theory would render any attempt by a creditor to support a Rule 60(b) motion—a permissible motion under the Federal Rules of Civil Procedure and the Bankruptcy Code—as a violation of a discharge injunction. Such an outcome would undermine the purpose of Rule 60(b), and would, in effect, shut down Caiarelli's remaining avenue for relief.

The ratification order is also, to say the least, several steps removed from a collection on the judgment. Before Caiarelli could even present her argument that the judgment is non-dischargeable—let alone initiate a collection action—the bankruptcy court must approve a Rule 60(b) motion to reopen the adversary proceeding. This is a high bar for relief. *See, e.g., Eskridge v. Cook Cnty.*, 577 F.3d 806, 809 (7th Cir. 2009) ("relief under Rule 60(b) is 'an extraordinary remedy and is granted only in exceptional circumstances'" (quoting *McCormick v. City of Chi.*, 230 F.3d 319, 327 (7th Cir. 2000)). And even if Caiarelli does establish that "exceptional circumstances" warrant relief under Rule 60(b), she must also convince the bankruptcy court that the judgment is non-dischargeable. Then, and only then, could Caiarelli attempt collection. It goes without saying that,

---

[4] While the appeal was pending before the district court, Caiarelli filed a Rule 60(b) motion to vacate the dismissal. The bankruptcy court denied the motion with prejudice to the extent it was based on subsections (1)–(3), and without prejudice to the extent it was based on subsections (4)–(6). *See* R. 47-1, Order (Apr. 29, 2014).

at this stage of the litigation, a direct action to collect is purely hypothetical.

Given the facts presented—and in particular, the procedural gulf between the ratification order and an action to collect—we are not convinced that the Appellees violated the statutory discharge or plan injunctions by obtaining evidence in support of a permissible post-judgment motion.

## C.  Collateral Attack

Lastly, the district court correctly determined that the ratification order is not an impermissible collateral attack on a federal judgment—i.e., the bankruptcy court's dismissal order.

In its dismissal order, the bankruptcy court held that Caiarelli presented insufficient evidence to establish standing to enforce the judgment against Taylor. In contrast, when adjudicating the motion to ratify, the probate court did not determine whether Caiarelli may enforce the judgment against Taylor, or even whether Caiarelli had standing to make such an argument before the bankruptcy court. The probate court issued a declaration as to the validity of the assignment—and that is all. As Taylor noted in his brief, such a declaration is a "routine aspect of Washington probate practice." Appellant's Br. 27. The record reveals that the bankruptcy court was reluctant to engage in this "routine aspect" of probate court, as it passed on determining the validity of the assignment. *See* Dismissal Order Hr'g Tr. at 145 ("In order to find [out whether the assignment is valid], we have to send it back to Judge Rogers to determine that. It's an evidentiary issue for me. I have exclusive jurisdiction to determine standing. And I think

that … [Caiarelli failed] to me[et] the burden of proving standing.").

Additionally, the dismissal order did not expressly prohibit Caiarelli from returning to the probate court. Instead, it prohibited her from "cur[ing]" any deficiencies with the assignment—or in other words, retroactively establishing standing. R. 70-9, Hr'g Tr. (Mar. 19, 2013) at 63 ("[T]he discharge injunction doesn't permit the plaintiff … to go back *nunc pro tunc* and cure whatever defects there may have been in … her standing when she original brought the [adversary proceeding]"). But Caiarelli was not seeking to "cure" any deficiencies with the assignment. She sought a declaration that the assignment "has been valid since its original signing." Ratification Order at 42. Thus, the state court declaration and the federal judgment are not in conflict.

Taylor claims that an action may still constitute an impermissible collateral attack if its "inevitable effect" is to undermine a federal judgment. *See* Appellant's Br. at 23–25 (citing *Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358 (5th Cir. 1972), and *GAF Holdings, LLC v. Rinaldi (In re Farmland Indus., Inc.*, 376 B.R. 718 (Bankr. W.D. Mo. 2007)). The inevitable effect of the ratification motion, argues Taylor, was to "overrule the legal and practical effects" of the dismissal order. *Id.* at 27.

Taylor's interpretation of the collateral attack doctrine, when applied to the present facts, is unduly broad. The ratification order was sought to support, or "muster additional evidence" for, a Rule 60(b) motion, *see* Appellees' Br. at 22, and neither party disputes that a Rule 60(b) motion is a permissible

collateral attack on a federal judgment. *See Bell v. Eastman Kodak Co.*, 214 F.3d 798, 800–01 (7th Cir. 2000). So under Taylor's "inevitable effect" theory, obtaining evidence to support a permissible collateral attack may, in and of itself, constitute an impermissible collateral attack. Such an outcome would, again, undermine the purpose of Rule 60(b)—particularly in the present circumstances, where the ratification order is central to the Appellees' argument for relief.[5]

Further, there is nothing "inevitable" about the effect of the ratification order. The bankruptcy court retains exclusive jurisdiction to determine whether Caiarelli has standing to pursue the adversary proceeding against Taylor. *See* U.S.C. 11 § 523(c)(1). Upon receipt of the ratification order, the bankruptcy court is free to take it, leave it, or otherwise do with it what it pleases. *See also McCormick*, 230 F.3d at 327 (a court's decision to reinstate a case under Rule 60(b) amounts

---

[5] Taylor argues that "Rule 60(b) does not exist to extricate a litigant from risky litigation tactics that later turn out to have been improvident." Appellant's Reply 2. He notes that the Appellees had ample opportunity to resolve standing without resorting to a post-discharge return to probate court. Namely, the Appellees could have requested a lift of the automatic stay to permit a resolution of the assignment issue in state court; requested an extension to file an adversary proceeding under § 523(a); directly appealed the dismissal order; or moved to vacate the dismissal order under Rule 59(e). Perhaps, but this is an argument as to why relief is inappropriate under Rule 60(b), *see* Fed. R. Civ. P. 60(b) ("the court may relieve a party … from a final judgment … for … newly discovered evidence that, *with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b).*" (emphasis added)), and is therefore more appropriately made before the bankruptcy court.

to "discretion piled on discretion.") (internal quotation marks and citation omitted). As Appellees' counsel aptly noted at oral argument, the road to collection is an "uphill battle."

Accordingly, the district court correctly determined that the ratification order is not an impermissible collateral attack on a federal judgment.

## II. CONCLUSION

For the foregoing reasons, we concur with the district court's findings that the appeal was not moot, and that the bankruptcy court abused its discretion by issuing the contempt order, damages order, and judgment. The judgment of the district court is AFFIRMED.