In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-2251

GWENDOLYN PHILLIPS,

*Plaintiff-Appellant,*

*v.*

ASSET ACCEPTANCE, LLC,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 09 C 7993 — **Gary S. Feinerman**, *Judge.*

ARGUED NOVEMBER 8, 2013 — DECIDED DECEMBER 2, 2013

Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* We have granted the plaintiff's petition for leave to appeal the district court's denial of her motion to certify a class.

The plaintiff, a consumer, was sued by Asset Acceptance, a debt collector that is the defendant in this case, for a debt arising from her purchase of natural gas for household use. She riposted with the present suit, which charges that Asset

Acceptance sued her after the statute of limitations on the creditor's claim had run. If this is true, Asset Acceptance's suit violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*; see §§ 1692e, 1692f; *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32–33 (3d Cir. 2011) (per curiam); *Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324, 332–33 (6th Cir. 2006); *Herkert v. MRC Receivables Corp.*, 655 F. Supp. 2d 870, 875–76 (N.D. Ill. 2009). The complaint contains supplemental claims under Illinois and other states' laws, making similar allegations.

The reason for outlawing stale suits to collect consumer debts is well explained in *Kimber v. Federal Financial Corp.*, 668 F. Supp. 1480, 1487 (M.D. Ala. 1987):

> As with any defendant sued on a stale claim, the passage of time not only dulls the consumer's memory of the circumstances and validity of the debt, but heightens the probability that she will no longer have personal records detailing the status of the debt. Indeed, the unfairness of such conduct is particularly clear in the consumer context where courts have imposed a heightened standard of care—that sufficient to protect the least sophisticated consumer. Because few unsophisticated consumers would be aware that a statute of limitations could be used to defend against lawsuits based on stale debts, such consumers would unwittingly acquiesce to such lawsuits. And, even if the consumer realizes that she can use time as a defense, she will more than likely still give in rather than fight the lawsuit because she must still expend energy and resources and subject herself to the embarrassment of going into court to present the defense; this is particularly true in light of the costs of attorneys today.

Phillips moved to certify a plaintiff class consisting of debtors sued by Asset Acceptance for debts arising from the sale of natural gas to consumers—sued, as Phillips had been sued, after the statute of limitations had run. She had filed her suit at the tail end of 2009 and her motion for class certification in April of the following year. By March 2011 the motion was ripe for the district judge to rule on, but for unexplained reasons he didn't rule for 25 more months. When finally he did, he denied the motion, precipitating the petition for leave to appeal.

According to data compiled for use in briefing the motion, the class that the plaintiff wants certified has 793 members, of whom 343 reside in Illinois; there is as yet virtually no information about the others. Of the 343, 290 were sued between four and five years after the claims against them accrued (debt-collection claims accrue on the date that the debt sued on became delinquent), and 45 were sued more than five years after accrual. We don't know the situation of the remaining 8 Illinois debtors (343 − (290 + 45) = 8), though in its brief filed in the district court opposing class certification the defendant said they'd been sued within four years of accrual. Of the 45, 23 were served and 22 not; the corresponding figures for the 290 are 93 and 197 but the served/not served figures for the 290 played no part in the district court's analysis.

The statute of limitations applicable to the 335 (343 − 8) Illinoisans was either four or five years; the plaintiff says four, the defendant five. Indisputably the plaintiff was sued more than five years after the claim against her accrued. Therefore, the district judge reasoned, she was indifferent to whether the statute of limitations was four or five years—the

suit against her was untimely in either event—and she thus lacked an adequate incentive to litigate on behalf of the 290 class members who were victims of untimely suits only if the statute of limitations is four years. So the judge discarded the 290, which shrank the class to 45—and then he shrank it further, to 23, by ruling that suing to collect a debt but failing to serve the defendant does not violate the Fair Debt Collection Practices Act even if the suit is untimely. No service, no harm, he thought, because without service the court in which a suit is filed does not obtain jurisdiction over the defendant.

The judge capped his analysis by ruling that 23 was too small a number of claimants to justify a class action; with a number so small, joinder by the plaintiff, he ruled, would be an adequate alternative to a class action. This ruling knocked out the Illinois state law claims, but not necessarily the federal ones, as they are not limited to Illinois residents—remember that the total membership of the proposed class is 793, and thus fewer than half are Illinoisans. But because there was as yet no information about the *Ausländers* (such as how many of them had been sued more than 5 years after their debts had become delinquent), the judge would not exclude the possibility that the federal claims (that is, the claims based on the Fair Debt Collection Practices Act) were sufficiently numerous to justify certification. But presumably in that event—though the judge didn't mention this wrinkle—either the named plaintiff (Phillips) would have to be replaced by another class member, one who unlike Phillips had been sued within five years of the accrual of the creditor's claim, or the other class member would have to be made a second class representative.

We are skeptical that Phillips is not an *adequate* representative of the debtors sued more than four but fewer than five years after the creditors' claims accrued, just because her claim is solid whether the statute of limitations is four years or five. To question her adequacy is to be unrealistic about the role of the class representative in a class action suit. The role is nominal. *Dechert v. Cadle Co.*, 333 F.3d 801, 802–03 (7th Cir. 2003); *Culver v. City of Milwaukee*, 277 F.3d 908, 910 (7th Cir. 2002); cf. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997). The class representative receives modest compensation (what is called an "incentive fee" or "incentive award") for what usually are minimal services in the class action suit, see *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876–77 (7th Cir. 2012); Theodore Eisenberg & Geoffrey P. Miller, "Incentive Awards to Class Action Plaintiffs: An Empirical Study," 53 *UCLA L. Rev.* 1303, 1308 (2006)—which is in fact entirely managed by class counsel. For "class action attorneys are the real principals and the class representative/clients their agents" in class action suits. 1 William B. Rubenstein, *Newberg on Class Actions* § 3:52, p. 327 (5th ed. 2011); see *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 678 (7th Cir. 1987); *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); Martin H. Redish, "Class Actions and the Democratic Difficulty: Rethinking the Intersection of Private Litigation and Public Goals," 2003 *U. Chi. Legal F.* 71, 105. If the suit is successful, they receive much greater compensation than the class representative(s).

But Phillips's (modest) services to the class will be greater, and her incentive award likely therefore to be greater if the suit is successful, the more complex the class is. And it *will* be more complex if the class includes the four-year as

well as the five-year debtors. So she does have an incentive to assist in the claims of the four-year debtors, even though any attorneys' fees awarded by the court (if they win) will dwarf her compensation.

A greater concern is that if Phillips has nothing to gain from establishing that the governing statute of limitations is 4 years, her claim is not *typical* of the claims of the entire class, as also required by Fed. R. Civ. P. 23(a)(3); see *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 155–56 (1982). Were there doubt about Phillips's adequacy as class representative—and given that there are grounds for doubt about the typicality of her claim—the judge could have created a subclass consisting of the four-year class members and directed class counsel to designate a representative for it. There was no reason to refuse to certify a class. Moreover, if the statute of limitations is four years, all the Illinois class members (and probably the rest of the 793 class members as well) are in the same boat—sued after the statute of limitations on the creditors' claims had run. In that event the issue of typicality (along with the non-issue of adequacy) will evaporate. So the judge, if unwilling (as he was) to appoint a second class representative, should have ruled on whether the statute of limitations was four years or five.

The defendant argues that it would have been wrong for the judge to do so because statute of limitations is a merits issue rather than one of class action procedure. In this case, actually, it's both, because resolving it would determine the composition of the class and might (if the answer shrank the class to a size at which a joinder of plaintiffs would be a feasible alternative) determine whether the suit could be maintained as a class action at all. See *Amgen Inc. v. Connecticut*

*Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551–52 (2011); *American Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010) (per curiam); *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676–77 (7th Cir. 2001). Since it is a pure question of law, the district judge could answer it without requiring additional discovery or resolving factual disputes.

And for the same reason we can rule on it. The defendant argues, no, the district judge is *entitled* to rule on it first. That's wrong. Appellate courts decide pure questions of law—that is, questions of law the answers to which do not depend on resolving factual disputes—without deference to the answers given by trial judges ("*de novo*," as the cases say). *Pierce v. Underwood*, 487 U.S. 552, 557–58 (1988); *Superl Sequoia Ltd. v. Carlson Co.*, 615 F.3d 831, 833 (7th Cir. 2010); 9C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2588, pp. 440–58 (3d ed. 2008). There is no obligation to allow a district court to opine on an issue when the appellate court has no obligation to defer, to even the slightest extent, to the district court's view of the matter.

With the focus of the litigation to date on debt-collection suits against Illinois residents, the choice is between Illinois' four-year statute of limitations for suits on sale contracts, 810 ILCS 5/2-725(1), and its five-year statute of limitations for suits on unwritten contracts. 735 ILCS 5/13-205. It's true though ignored by the parties that the statute of limitations for suits on written contracts is ten years, 735 ILCS 5/13-206, and the natural gas contracts on which the defendant's debt-collection suits were based are written. But both the five-year and the ten-year statutes of limitations have an exception for contracts governed by section 2-725 of the Uniform

Commercial Code (codified for Illinois in 810 ILCS 5/2-725), the four-year statute. So that's the one that governs sales contracts.

The defendant argues that a sale of natural gas pursuant to utility contracts, the type of contract involved in this case, is a mixed goods-and-services sale; natural gas to be usable must be delivered, and the usual mode of delivery is by piping it into the user's premises. Mixed goods-and-services sales are treated as sales of services when the element of service predominates, *Belleville Toyota v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 194–95 (Ill. 2002), and sales of services are not subject to UCC § 2-725 because Article 2 is limited ("unless the context otherwise requires") to "transactions in goods." 810 ILCS 5/2-102. Sales of goods, however, being transactions in goods, are governed by Article 2, and specifically by section 2-725—and the UCC defines natural gas as a good. 810 ILCS 5/2-107(1); see *Prenalta Corp. v. Colorado Interstate Gas Co.*, 944 F.2d 677, 678, 687 (10th Cir. 1991); *Pennzoil Co. v. FERC*, 645 F.2d 360, 387 (5th Cir. 1981); *Energy Marketing Services, Inc. v. Homer Laughlin China Co.*, 186 F.R.D. 369, 371, 374 (S.D. Ohio 1999), affirmed, 229 F.3d 1151 (6th Cir. 2000); *Stanton v. National Fuel Gas Co.*, 1 Pa. D. & C. 4th 223, 233–34 (Com. Pl. 1987); *In re Pilgrim's Pride Corp.*, 421 B.R. 231, 240–41 (Bankr. N.D. Tex. 2009). The drafters must have been aware that natural gas is usually delivered to homes and other places that use natural gas in pipes. So a good can be delivered in a pipe.

The defendant argues that it sued some of the class members to collect debts for both gas and electric service, and there is a split of authority over whether electric service (like water service) should be considered the sale of a good

or of a service. Compare *GFI Wisconsin, Inc. v. Reedsburg Utility Comm'n*, 440 B.R. 791, 797–802 (W.D. Wis. 2010), and *Helvey v. Wabash County REMC*, 278 N.E.2d 608, 609–10 (Ind. App. 1972), with *In re Pilgrim's Pride Corp., supra*, 421 B.R. at 238–40, and *Williams v. Detroit Edison Co.*, 234 N.W.2d 702, 705–06 (Mich. App. 1975). This is not true of the sale to Phillips, however, or the sales to any other Illinois class members. As far as the record indicates, the only utility company serving Illinois customers that the defendant purchased debts from to collect, a company called Nicor, sells only gas. Anyway it should make no difference whether class members were sued just to collect money owing for the purchase of gas or money owing for the purchase of electricity as well. The two costs are separated on the customer's bill.

All the class members, therefore, are in the same boat, having been sued more than four years after their debts accrued—unless the judge was right to carve out debtors who were not served with the untimely complaints. His ground was that if there's no service, the debtor-defendant has nothing to fear. That's true sometimes, but not always—probably not often. "[F]iling a complaint may cause actual harm to the debtor: a pending legal action, even pre-service, could be a red flag to the debtor's other creditors and anyone who runs a background or credit check, including landlords and employers. The debt collector may also use the pending legal action to pressure a debtor to pay back the debt informally, without serving the complaint—precisely the type of unfair practice prohibited by the FDCPA. *See* 15 U.S.C. § 1692e(5) ('The threat to take any action that cannot legally be taken or that is not intended to be taken.')." *Tyler v. DH Capital Mgmt., Inc.*, No. 13-5021, 2013 WL 5542072, at *6 (6th Cir. Nov. 7, 2013).

But even if no debtors were ever harmed by being sued but not served, the district judge would have been wrong to exclude from the class the debtors who were not served. Proof of injury is not required when the only damages sought are statutory. *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952–53 (7th Cir. 2006); *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997); *Baker v. G.C. Services Corp.*, 677 F.2d 775, 780–81 (9th Cir. 1982). And those appear to be the only damages sought in the federal portion of this case. The Fair Debt Collection Practices Act does not specify the amount of statutory damages to be awarded, but it imposes ceilings: in class actions the named plaintiff may receive no more than $1,000 and the class as a whole no more than the lesser of either $500,000 or 1 percent of the debt collector's net worth. 15 U.S.C. § 1692k(a)(2)(B). But the controlling consideration, so far as any potential difficulty in computing damages to class members for violation of the Fair Debt Collection Practices Act is concerned, is that there does not appear to be any ground for awarding a different amount to different class members.

Actual damages are, however, sought in at least one of the supplemental state law claims (the Illinois claim—and may be sought in others as well), and that's a complicating factor, as actual damages are bound to vary across class members. But we said in *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800–01 (7th Cir. 2013), that "a class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) [of the Federal Rules of Civil Procedure] and will often be the sensible way to proceed. … It would drive a stake through the heart

of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages. If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification. Otherwise defendants would be able to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits."

Another complicating factor in this case, however, is that different states in which class members reside may differ with respect to their laws governing suits against debt collectors. But whether because of these or any other factors any or all of the supplemental state law claims should be retained in this class action, compartmentalized by the creation of subclasses, or relinquished altogether, is not before us.

To conclude: all 343 Illinois residents appear to be proper class members, adequately represented by plaintiff Phillips because the applicable statute of limitations is four years, so that all the debt collection suits against the class members were time-barred and hence violated the Fair Debt Collection Practices Act (and perhaps Illinois law as well, though we do not opine on that question)—unless it should turn out that the defendant can dock in the safe harbor of 15 U.S.C. § 1692k(c) ("a debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was

not intentional and resulted from a bona fide error notwith-standing the maintenance of procedures reasonably adapted to avoid any such error"); or that the defendant has defenses, such as equitable tolling or equitable estoppel, to the bar of the statute of limitations. But all that remains for the district judge to do regarding certification is to determine the proper scope of the class. It need not be limited to Illinois residents or to claims under the Fair Debt Collection Practices Act. But how far it extends (and whether subclasses should be created for residents of different states because of differences among state laws) remains to be determined.

The denial of class certification is reversed and the case returned to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.