2016 IL App (1st) 143922

No. 1-14-3922

Fifth Division
March 4, 2016

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

|  |  |  |
|---|---|---|
| HBLC, INC., | ) | |
| | ) | |
| Plaintiff and Counterdefendant-Appellee, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| v. | ) | |
| | ) | No. 12 M1 105690 |
| DANNY EGAN, Individually and on Behalf of the Class | ) | |
| Defined Below, | ) | The Honorable |
| | ) | Kathleen Kennedy, |
| Defendant and Counterplaintiff-Appellant | ) | Judge Presiding. |
| | ) | |
| (Steven J. Fink & Associates, P.C., | ) | |
| Counterdefendant-Appellee). | ) | |
| | ) | |

_____

JUSTICE GORDON delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1     The instant appeal arises from a debt collection lawsuit filed by plaintiff HBLC, Inc.

(HBLC), which sought to collect on an unpaid credit card account that defendant Danny

Egan claimed had been opened fraudulently. Egan filed a class action counterclaim, which

alleged that HBLC and counterdefendant Steven J. Fink & Associates, P.C. (Fink), violated

the federal Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. § 1692 *et seq.* (2012))

and the Illinois Collection Agency Act (225 ILCS 425/1 *et seq.* (West 2012)) by filing time-

barred lawsuits for the collection of debts that were beyond the statute of limitations. The trial court dismissed Egan's counterclaim under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2012)) and, for the reasons that follow, we reverse.

¶ 2                                   BACKGROUND

¶ 3        On January 26, 2012, HBLC filed a verified complaint against Egan, alleging that Egan opened a Credit One Bank credit card account but failed to make monthly payments due on the account. The complaint alleged that "pursuant to the Affidavit attached hereto as Exhibit '1' there is due to Plaintiff from the Defendant, as of the filing date of this complaint, the sum of $2545.84 (which includes $350 as reasonable attorneys' fees as permitted by the Cardmember Agreement) plus court costs as permitted by the Cardmember Agreement and as permitted by statute plus post-judgment interest at the rate allowed by law until the debt is paid."

¶ 4        On February 16, 2012, Egan filed an answer, affirmative defenses, and class action counterclaim. Egan denied the allegations of the complaint and alleged that the debt at issue was opened fraudulently using Egan's personal information without his knowledge or authorization. Egan raised as an affirmative defense "failure to state a claim/statute of limitations," in which he alleged that his credit report indicated that the date of last activity on the alleged debt was September 14, 2006, meaning that the filing of a lawsuit to collect the debt was time-barred because the five-year statute of limitations had run at the time of the filing of the complaint.

¶ 5        Egan also included a class action counterclaim against HBLC and the law firm of Steven J. Fink & Associates, P.C. (Fink), alleging that HBLC and Fink had violated the FDCPA (15 U.S.C. § 1692 *et seq.* (2012)) and the Collection Agency Act (225 ILCS 425/1 *et seq.* (West

2012)) by filing time-barred lawsuits for the collection of debts that were beyond the statute of limitations.

¶ 6   The counterclaim alleged that on October 7, 2011, Egan obtained a copy of his personal credit report and discovered the existence of a credit card account from Credit One Bank (Credit One), which Egan was unaware of and which had been opened without his authorization. Egan contacted Credit One on October 17, 2011, to dispute the debt, and Credit One responded by advising him that Credit One had sold the disputed account to HBLC. On February 8, 2012, Egan received a summons and complaint alleging that a debt of $2,545.84 was owed to HBLC as final transferee of Credit One; the complaint had been filed on January 26, 2012, by Fink and was signed by Steven J. Fink. The counterclaim alleged that Egan's credit report indicated that Credit One had reported the last activity on the account as occurring on September 14, 2006, meaning that at the time that HBLC and Fink filed the lawsuit, the five-year statute of limitations had run and the action was consequently time-barred. The counterclaim further alleged that "HBLC and Fink knew, or should have known, that the five year statute of limitations had run on the alleged debt at the time they caused the complaint to be filed."

¶ 7   The counterclaim stated that Egan was bringing the class action counterclaim on behalf of three classes. The "HBLC FDCPA Class" consisted of "(a) all natural persons residing in Illinois (b) against whom HBLC, Inc. filed a lawsuit to collect a credit card debt (c) where the date of last activity on such account was more than five years prior to the date of filing (d) between a date of one year prior to and 20 days after the filing of this counter-claim." The "HBLC ICAA Class" consisted of "(a) all natural persons residing in Illinois (b) against whom HBLC, Inc. filed a lawsuit to collect a credit card debt (c) where the date of last

activity on such account was more than five years prior to the date of filing (d) between a date of five years prior to and 20 days after the filing of this counter-claim." The "Fink FDCPA Class" consisted of "(a) all natural persons residing in Illinois (b) against whom Steven J. Fink & Associates, P.C. filed a lawsuit to collect a credit card debt (c) where the date of last activity on such account was more than five years prior to the date of filing (d) between a date of one year prior to and 20 days after the filing of this counter-claim." The counterclaim alleged that HBLC had filed over 1,000 consumer debt collection lawsuits between 2011 and 2012 in the circuit court of Cook County alone, and that Fink had filed each of those lawsuits on HBLC's behalf and had represented HBLC in the lawsuits.

¶ 8    Count I of the counterclaim was for violations of the FDCPA and alleged that HBLC and Fink violated the FDCPA by "falsely representing the legal status of the debt in the complaint filed on January 26, 2012," and by "using unfair and deceptive means to attempt to collect a debt, namely by falsely representing that Counter-Plaintiff was obligated to repay the original Credit One Bank debt, when in fact that remedy was extinguished by operation of law, thus suing on a time-barred debt." Count I further alleged that as a result of the FDCPA violations, HBLC and Fink were liable to Egan and the classes for actual damages, statutory damages of $500,000 each, and costs and attorney fees.

¶ 9    Count II of the counterclaim was for violations of the Collection Agency Act, which alleged that the Collection Agency Act prohibited a collection agency from attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist and further prohibited a collection agency from misrepresenting the amount owed and from collecting or attempting to collect any amount not authorized by law. Count II further alleged that "[w]ith respect to counter-plaintiff, HBLC attempted to enforce

4

a remedy they had reason to know did not exist, misrepresented the amount legally owed, and attempted to collect an amount unauthorized by law in violation of the [Collection Agency Act] when they caused to be filed a time-barred lawsuit for the collection of a debt when the statute of limitations had already run." Count II requested judgment in favor of Egan and the classes for actual damages, punitive damages, and costs and attorney fees.

¶ 10        On February 16, 2012, on the same day as the filing of his answer, affirmative defenses, and class action counterclaim, Egan filed a motion for class certification on his counterclaim.

¶ 11        On March 13, 2012, Egan filed a motion to transfer the case from the first municipal division to the chancery division of the circuit court because his counterclaim sought class certification. On May 18, 2012, the case was reassigned to the chancery division.

¶ 12        On September 14, 2012, HBLC filed its answer and affirmative defenses to Egan's class action counterclaim. Also on September 14, 2012, Fink filed its answer and affirmative defenses to Egan's class action counterclaim.

¶ 13        On November 14, 2012, the trial court gave Egan leave to file amended affirmative defenses and an amended counterclaim, which Egan filed on November 28, 2012. In his amended class action counterclaim, Egan added allegations that HBLC failed to provide valid assignments to establish its ownership of the debt or to otherwise establish a chain of title. The amended counterclaim alleged that HBLC first filed documentation of the alleged assignments of the debt when it attached them to a motion to compel arbitration; HBLC did not attach them to its complaint. Furthermore, the amended counterclaim alleged that the attached documents did not comply with the requirements of the Collection Agency Act, so HBLC had not established that it owned the alleged debt that it was attempting to collect.

¶ 14     The amended counterclaim identified five classes, as opposed to the original counterclaim's three classes. The "HBLC ICAA-Assignment Class" consisted of "(a) all natural persons residing in Illinois (b) against whom HBLC, Inc. filed a lawsuit to collect a debt incurred for personal, family, or household purposes (c) where no assignment was attached to the complaint or where the attached assignment does not include the effective date of the assignment, the consideration for the assignment, or identifying information for the account that is being assigned (d) between February 16, 2007 and March 7, 2012."

¶ 15     The "HBLC FDCPA-Assignment Class" consisted of "(a) all natural persons residing in Illinois (b) against whom HBLC, Inc. filed a lawsuit to collect a debt incurred for personal, family, or household purposes (c) where no assignment was attached to the complaint or where the attached assignment does not include the effective date of the assignment, the consideration for the assignment, or identifying information for the account that is being assigned (d) between February 16, 2011 and March 7, 2012."

¶ 16     The "HBLC ICAA-Statute of Limitations Class" consisted of "(a) all natural persons residing in Illinois (b) against whom HBLC, Inc. filed a lawsuit to collect a credit card debt (c) where the date of last activity on such account was more than five years prior to the date of filing (d) between February 16, 2007 and March 7, 2012."

¶ 17     The "HBLC FDCPA-Statute of Limitations Class" consisted of "(a) all natural persons residing in Illinois (b) against whom HBLC, Inc. filed a lawsuit to collect a credit card debt (c) where the date of last activity on such account was more than five years prior to the date of filing (d) between February 16, 2011 and March 7, 2012."

¶ 18     Finally, the "Fink FDCPA-Statute of Limitations Class" consisted of "(a) all natural persons residing in Illinois (b) against whom Steven J. Fink & Associates, P.C. filed a

lawsuit to collect a credit card debt (c) where the date of last activity on such account was more than five years prior to the date of filing (d) between February 16, 2011 and March 7, 2012."

¶ 19     The amended counterclaim added allegations to count I, concerning the FDCPA, that alleged that HBLC and Fink violated the FDCPA by "threatening to take action that could not legally be taken because the [Collection Agency Act] prohibited HBLC from filing the complaint without valid assignments."

¶ 20     The amended count II was against HBLC and alleged a violation of the Collection Agency Act due to the lack of valid assignments. The amended count II alleged that "HBLC filed lawsuits that were prohibited by the [Collection Agency Act] because it did not attach to the complaint, nor even have, valid assignments to establish its ownership of the debt or otherwise establish a chain of title. With each complaint filed, HBLC misrepresented to consumers and courts that it had the right to file those lawsuits," thereby violating the Collection Agency Act. Count II further alleged that "HBLC engaged in such conduct for the purpose of depriving Egan and the class members of their money." Count II requested judgment in favor of Egan and the ICAA Assignment classes for actual damages, punitive damages, and costs and attorney fees.

¶ 21     The amended count III was essentially identical to count II of the original complaint, for violations of the Collection Agency Act on the basis of filing suit to collect a time-barred debt, except that it added the allegation that "HBLC engaged in such conduct for the purpose of depriving Egan and the class members of their money."

¶ 22     On February 27, 2014, HBLC and Fink filed a motion to dismiss Egan's amended counterclaim pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS

7

5/2-615 (West 2012)). The motion claimed that Egan's claims under the Collection Agency Act should be dismissed because there was no private right of action available to Egan. As to Egan's claims under the FDCPA, the motion claimed that the FDCPA was based on the same facts and legal theories as the Collection Agency Act claims, so "[s]ince the [Collection Agency Act] claims should be dismissed, the FDCPA claims should too." The motion further claimed that "the FDCPA cannot be used as a vehicle to dictate the content of state court pleadings." Finally, the motion claimed that the amended counterclaim did not allege any false statements or misrepresentations, and only alleged the date of last activity on the account to support the "time barred debt theory."

¶ 23    On July 22, 2014, the trial court entered an order granting HBLC and Fink's motion to dismiss and dismissed Egan's amended class action counterclaim in its entirety. With respect to the FDCPA claims in count I of the counterclaim that were based on the statute of limitations, the court found that "HBLC and Fink persuasively argued that the other FDCPA claims cannot survive because they are based on representations made to the state court by Fink when the collection complaint was filed. The Court [also found], as HBLC and Fink argued, that because the FDCPA doesn't cover the procedure or content of state court complaints to collect a debt, the FDCPA claims must be dismissed with prejudice." Egan filed a motion for reconsideration of his FDCPA claim,[1] which was denied on December 3, 2014. Egan timely appealed, and this appeal follows.

¶ 24                                              ANALYSIS

¶ 25    On appeal, Egan is challenging only the dismissal of count I of his counterclaim, the FDCPA claim. The trial court dismissed this count pursuant to section 2-615 of the Code. A

---

[1] Egan did not seek reconsideration of the two counts of the amended class action counterclaim concerning the Collection Agency Act, nor are those counts at issue on appeal.

motion to dismiss under section 2-615 of the Code challenges the legal sufficiency of the complaint by alleging defects on its face. *Young v. Bryco Arms*, 213 Ill. 2d 433, 440 (2004); *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). The critical inquiry is whether the allegations in the complaint are sufficient to state a cause of action upon which relief may be granted. *Wakulich*, 203 Ill. 2d at 228. In making this determination, all well-pleaded facts in the complaint, and all reasonable inferences that may be drawn from those facts, are taken as true. *Young*, 213 Ill. 2d at 441. In addition, we construe the allegations in the complaint in the light most favorable to the plaintiff. *Young*, 213 Ill. 2d at 441. We review *de novo* an order granting a section 2-615 motion to dismiss. *Young*, 213 Ill. 2d at 440; *Wakulich*, 203 Ill. 2d at 228. *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 26     In the case at bar, the trial court dismissed count I of Egan's amended class action counterclaim because the allegations of the complaint were "based on representations made to the state court by Fink when the collection complaint was filed" and further found that count I should be dismissed "because the FDCPA doesn't cover the procedure or content of state court complaints to collect a debt." Egan argues that both of these findings were erroneous, and argues that he stated a cause of action sufficient to withstand dismissal under section 2-615.

¶ 27     On appeal, HBLC and Fink do not dispute that a lawyer engaged in debt collection can be a debt collector within the meaning of the FDCPA, nor do they dispute that a state court pleading can violate the FDCPA if the pleading contains false representations about a debt.

Instead, they argue that "Egan has never claimed that there is any false or misleading statement on the face of the HBLC collection complaint filed against Egan. There is not." The focus of Egan's counterclaim is his allegation that HBLC and Fink filed the debt collection complaint against Egan while knowing that the five-year statute of limitations on the debt at issue had elapsed. The question presented to us on appeal, then, is whether knowingly filing a time-barred complaint in an Illinois court can be the basis for a FDCPA action. We agree with Egan that it can.

¶ 28        In the case at bar, Egan's amended class action counterclaim alleges that HBLC and Fink violated sections 1692e(2)(A), 1692e(10), and 1692f(1) of the FDCPA. Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e (2012). Specifically, section 1692e provides a list of conduct that "is a violation of this section" (15 U.S.C. § 1692e (2012)), including "[t]he false representation of *** the character, amount, or legal status of any debt" (15 U.S.C. § 1692e(2)(A) (2012)), and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt" (15 U.S.C. § 1692e(10) (2012)). Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f (2012). Additionally, section 1692f provides a list of conduct that "is a violation of this section" (15 U.S.C. § 1692f (2012)), including "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law" (15 U.S.C. § 1692f(1) (2012)). Egan argues that knowingly filing a complaint concerning a debt on which the statute of limitations has passed is a violation of the FDCPA.

¶ 29    In dismissing Egan's counterclaim, the trial court solely relied on *Gibbs v. Blitt & Gaines, P.C.*, 2014 IL App (1st) 123681, a recent case from this court considering the dismissal of a FDCPA claim. In that case, the creditor filed suit against the debtor, even though at the time the complaint was filed, the creditor was not an Illinois-licensed debt collection agency. *Gibbs*, 2014 IL App (1st) 123681, ¶ 5. The case was settled, but the debtor later filed a complaint in the circuit court of Cook County alleging that the law firm filing the suit had violated the FDCPA by filing suit on behalf of unlicensed collection agencies. *Gibbs*, 2014 IL App (1st) 123681, ¶ 7. The trial court dismissed the complaint under section 2-615, and we affirmed.

¶ 30    In affirming the dismissal, we noted that that the debtor argued that the law firm had violated the FDCPA by filing suit on behalf of an unlicensed debt collection agency in violation of the Collection Agency Act. *Gibbs*, 2014 IL App (1st) 123681, ¶ 11. We found, however, that there was no violation of the Collection Agency Act, and therefore, there could be no violation of the FDCPA. *Gibbs*, 2014 IL App (1st) 123681, ¶ 15.

¶ 31    We further explained that the FDCPA " 'was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation.' " *Gibbs*, 2014 IL App (1st) 123681, ¶ 16 (quoting *Carlson v. First Revenue Assurance*, 359 F.3d 1015, 1018 (8th Cir. 2004)). We also found persuasive an unreported federal district court case from Indiana, in which the district court found that section 1692e applied " 'to threats to take action that cannot legally be taken, but not illegal actions actually taken.' " *Gibbs*, 2014 IL App (1st) 123681, ¶ 17 (quoting *Flick v. American Acceptance Co.*, No. 3:11 CV 299, 2012 WL 1074288, at *4 (N.D. Ind. Mar. 28, 2012)). Finally, we noted that "federal cases have held that the act of filing a debt collection

suit under various circumstances, without more, is not sufficient to state a claim under the FDCPA." *Gibbs*, 2014 IL App (1st) 123681, ¶ 18.

¶ 32    We cannot agree with the trial court or with HBLC and Fink that *Gibbs* controls the instant case. First, unlike the debtor in *Gibbs*, Egan's counterclaim does not base its FDCPA claim on the existence of a Collection Agency Act violation. Instead, the allegation that HBLC and Fink violated the FDCPA by knowingly filing a time-barred complaint is independent from his claims under the Collection Agency Act. Next, while the precise subsection of section 1692e at issue is not identified in *Gibbs*, we relied on the reasoning in *Fick*, in which a section 1692e(5) violation was at issue. As the *Fick* court noted, "[b]y its plain language, Section 1692e(5) does not prohibit the taking of an action that cannot legally be taken. It only prohibits the 'threat to take any action that cannot legally be taken or that is not intended to be taken.' " *Fick*, 2012 WL 1074288, at *4 (quoting 15 U.S.C. § 1692e(5) (2012)). In the case at bar, by contrast, no section 1692e(5) violation is alleged. Instead, Egan's counterclaim alleges violations of sections 1692e(2)(A), 1692e(10), and 1692f(1), none of which is limited to threats to take action. Finally, in *Gibbs*, we considered several types of FDCPA lawsuits to conclude that "federal cases have held that the act of filing a debt collection suit under various circumstances, without more, is not sufficient to state a claim under the FDCPA." *Gibbs*, 2014 IL App (1st) 123681, ¶ 18. Here, by contrast, as we explain below, federal courts have considered the specific issue of whether knowingly filing a time-barred lawsuit can be a FDCPA violation, so we have no need to apply the more general analysis. Accordingly, *Gibbs* does not dictate the result that applies to the situation at issue in the instant case and we proceed to consider federal case law on this issue.

¶ 33  The FDCPA is a federal statute. "In construing a federal statute, we generally look to federal decisions for [their] interpretation of the statutory provisions." *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 142 (2006). Accordingly, "[w]hen interpreting federal statutes, we look to the decisions of the United States Supreme Court and federal circuit and district courts." *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 33. Our supreme court has instructed that United States Supreme Court interpretation of federal law "is clearly binding" on Illinois courts. *State Bank of Cherry*, 2013 IL 113836, ¶ 33. However, "in the absence of a United States Supreme Court decision, the weight this court gives to federal circuit and district court interpretations of federal law depends on factors such as uniformity of law and the soundness of the decisions." *State Bank of Cherry*, 2013 IL 113836, ¶ 33. "While we are *bound* only by the United States Supreme Court, if the lower federal courts are uniform on their interpretation of a federal statute, this court, in the interest of preserving unity, will give *considerable* weight to those courts' interpretations of federal law and find them to be highly persuasive. [Citation.] However, if the federal courts are split, we may elect to follow those decisions we believe to be better reasoned." (Emphases in original.) *State Bank of Cherry*, 2013 IL 113836, ¶ 34.

¶ 34  In the case at bar, the most relevant United States Supreme Court decision is that of *Heintz v. Jenkins*, 514 U.S. 291 (1995). In that case, the Supreme Court considered whether the term "debt collector," as used in the FDCPA, applied to "a lawyer who 'regularly,' *through litigation*, tries to collect consumer debts." (Emphasis in original.) *Heintz*, 514 U.S. at 292. A unanimous Supreme Court concluded that it did.

¶ 35  The plaintiff in *Heintz* was a woman who had borrowed money from a bank to purchase a vehicle and defaulted on her loan. *Heintz*, 514 U.S. at 293. The bank's law firm sued the

plaintiff in state court to recover the balance due and, as part of settlement negotiations, a lawyer with the law firm sent the plaintiff a letter listing the amount the plaintiff allegedly owed. *Heintz*, 514 U.S. at 293. The plaintiff then filed suit against the lawyer and his firm, alleging that the letter violated the FDCPA because it made a false representation of the amount of the debt. *Heintz*, 514 U.S. at 293.

¶ 36    The United States Supreme Court found that the FDCPA applied to "lawyers engaged in litigation." *Heintz*, 514 U.S. at 294. The Court rejected all of the law firm's arguments to the contrary, noting that the firm's arguments fell outside the range of reasonable interpretations of the statutory language. Accordingly, the Court concluded that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz*, 514 U.S. at 299.

¶ 37    HBLC and Fink argue that *Heintz* is inapposite, since *Heintz* involved the sending of a letter, not the filing of a pleading, and further argue that *Heintz* never addressed whether the act of filing a complaint by a licensed attorney could be the basis for a FDCPA claim. While HBLC and Fink are correct in their recitation of the facts, *Heintz* is nevertheless instructive in our analysis because the Supreme Court made it clear that the FDCPA applies to attorneys involved in litigation activities, which would presumably include the actual litigation of lawsuits. Indeed, one of the arguments that the Supreme Court rejected was the claim that if the FDCPA applied to litigation activities, then section 1692e(5) "would make liable any litigating lawyer who brought, and then lost, a claim against a debtor." *Heintz*, 514 U.S. at 295. Thus, it is apparent that the FDCPA would apply to the filing of a complaint, just as it would apply to any other litigation activity.

¶ 38     Furthermore, although the United States Supreme Court has not addressed whether it is a FDCPA violation to knowingly file a time-barred complaint, other federal courts have. For instance, in *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1079 (7th Cir. 2013), the Seventh Circuit noted that the plaintiff's suit "charges that [the defendant debt collector] sued her after the statute of limitations on the creditor's claim had run. If this is true, [the defendant's] suit violated the Fair Debt Collection Practices Act [citations]." The Seventh Circuit explained the reason for "outlawing stale suits to collect consumer debts," quoting from an Alabama district court case:

> " 'As with any defendant sued on a stale claim, the passage of time not only dulls the consumer's memory of the circumstances and validity of the debt, but heightens the probability that she will no longer have personal records detailing the status of the debt. Indeed, the unfairness of such conduct is particularly clear in the consumer context where courts have imposed a heightened standard of care—that sufficient to protect the least sophisticated consumer. Because few unsophisticated consumers would be aware that a statute of limitations could be used to defend against lawsuits based on stale debts, such consumers would unwittingly acquiesce to such lawsuits. And, even if the consumer realizes that she can use time as a defense, she will more than likely still give in rather than fight the lawsuit because she must still expend energy and resources and subject herself to the embarrassment of going into court to present the defense; this is particularly true in light of the costs of attorneys today.' "
> *Phillips*, 736 F.3d at 1079 (quoting *Kimber v. Federal Financial Corp.*, 668 F. Supp. 1480, 1487 (M.D. Ala. 1987)).

HBLC and Fink argue that *Phillips*, while "superficially lending some support to Egan's argument," is inapposite because the question in that case was whether the district court had erred in denying class certification and "[t]he opinion assumes that the filing of a time-barred claim violates the FDCPA because that is what the plaintiff there alleged." However, while *Phillips* is concerned with the denial of class certification, the opinion does not merely "assume" that there would be a violation because it is what the plaintiff alleged. Instead, the Seventh Circuit clearly states that if the plaintiff's allegations were correct, "[the defendant's] suit violated the Fair Debt Collection Practices Act." *Phillips*, 736 F.3d at 1079. The court cited the FDCPA and three cases in support of its statement. The court then explained its statement through the quote we have excerpted above. This can hardly be considered to be simply "assum[ing]" the plaintiff's position was correct because it is what the plaintiff alleged. The fact that this was a holding, not merely an assumption, is borne out by the Seventh Circuit's description of *Phillips* in *Suesz v. Med-1 Solutions, LLC*, 757 F.3d 636, 639 (7th Cir. 2014): "The FDCPA is designed to protect consumer debtors against unscrupulous methods of consumer debt collection. Thus in *Phillips* \*\*\* we held that the Act was violated by the disreputable tactic of suing a debtor after the statute of limitations has expired; the debt collector hopes that the debtor will be unaware that he has a complete defense to the suit and so will default, which will enable the debt collector to garnish the debtor's wages."

¶ 39    Additionally, several other circuits have reached a similar result. "Federal circuit and district courts have uniformly held that a debt collector's threatening to sue on a time-barred debt and/or filing a time-barred suit in state court to recover that debt violates §§ 1692e and 1692f." *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1259 (11th Cir. 2014) (collecting

cases). As the Third Circuit explained, "the majority of courts have held that when the expiration of the statute of limitations does not invalidate a debt, but merely renders it unenforceable, the FDCPA permits a debt collector to seek voluntary repayment of the time-barred debt *so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts*." (Emphasis added.) *Huertas v. Galaxy Asset Management*, 641 F.3d 28, 32-33 (3d Cir. 2011); see also *Freyermuth v. Credit Bureau Services, Inc.*, 248 F.3d 767, 771 (8th Cir. 2001) ("*[I]n the absence of a threat of litigation or actual litigation*, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid." (Emphasis added.)). Thus, while a creditor may attempt to collect a time-barred debt, it becomes a FDCPA violation to initiate or threaten legal action to recover the debt. But see *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014) (a debtor states a claim for a FDCPA violation when it misleads an unsophisticated consumer to believe a time-barred debt is legally enforceable, regardless of whether litigation is threatened). We further note that while HBLC and Fink attempt to distinguish Egan's citation to the numerous cases that have reached the same result, they are unable to point to any cases in which a federal court has found that the knowing filing of a time-barred complaint *cannot* be the basis for a FDCPA violation.

¶ 40    In the case at bar, HBLC and Fink filed a lawsuit to collect on a debt that Egan's counterclaim alleges they knew was time-barred. Taking the allegations of Egan's counterclaim as true, as we are required to do when reviewing the dismissal of a complaint under section 2-615 of the Code (*Young*, 213 Ill. 2d at 441), Egan has sufficiently alleged a violation of the FDCPA, at least at this early stage of the proceedings.

¶ 41        Furthermore, we find unpersuasive HBLC and Fink's argument that there could be no FDCPA violation because the content of the collection complaint itself did not contain any misrepresentations. As our supreme court has recently noted in connection with the Collection Agency Act, "[t]he suggestion that the 'mere filing of a lawsuit' cannot be abusive is either naive or disingenuous." *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 25. Additionally, on this point, we find instructive the reasoning in *Goins v. JBC & Associates, P.C.*, 352 F. Supp. 2d 262, 272 (D. Conn. 2005), in which the Connecticut district court considered whether the threat to file a time-barred lawsuit violated the FDCPA. The defendants in that case argued that the statute of limitations was merely an affirmative defense that could be waived and it did not bar them from pursuing a lawsuit against the plaintiff. *Goins*, 352 F. Supp. 2d at 272. The court rejected that argument, however, finding that "[a]s the statute of limitations would be a complete defense to any suit, *** the threat to bring suit under such circumstances can at best be described as a 'misleading' representation, in violation of § 1692e." *Goins*, 352 F. Supp. 2d at 272. The court noted that under Federal Rule of Civil Procedure 11, the attorney "has an obligation to represent to the court to the best of his knowledge, 'after an inquiry reasonable under the circumstances,' that the claims presented are 'warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law of the establishment of new law' " and would be subject to sanctions for knowingly filing an undisputedly time-barred lawsuit. *Goins*, 352 F. Supp. 2d at 272 (quoting Fed. R. Civ. P. 11). The court stated that the fact that the statute of limitations was an affirmative defense "does not relieve defendants of their professional responsibility, when they do not dispute the applicability or viability of the defense." *Goins*, 352 F. Supp. 2d at 272. Accordingly, because the defendants were not entitled to sue in such

18

circumstances, the district court found the threats to sue made by the defendants to be improper. *Goins*, 352 F. Supp. 2d at 272.

¶ 42　　　　　Similarly, under Illinois Supreme Court Rule 137(a) (eff. July 1, 2013), the signature of an attorney on a pleading "constitutes a certificate by him that he has read the pleading \*\*\*; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Thus, the knowing filing of a time-barred lawsuit would be improper where, as here, HBLC and Fink have not attempted to argue that there is a reason why their claim is still viable.

¶ 43　　　　　We also find unpersuasive HBLC and Fink's reliance on *Harold v. Steel*, 773 F.3d 884 (7th Cir. 2014), which they use to argue that the Seventh Circuit has indicated that "FDCPA § 1692e 'does not even hint that federal courts have been authorized to monitor how debt-collection litigation is handled in state courts.' " (quoting *Harold*, 773 F.3d at 887). *Harold* involved a situation where the plaintiff filed a FDCPA suit in federal court to challenge a state court garnishment order. *Harold*, 773 F.3d at 885. The Seventh Circuit affirmed the district court's dismissal, agreeing with the district court that the claim was barred by the *Rooker-Feldman* doctrine. *Harold*, 773 F.3d at 887. *Harold* has nothing to do with the question presented on appeal, namely, whether the knowing filing of a time-barred claim in state court can be the basis for a FDCPA violation. Indeed, if anything, *Harold*'s final paragraph actually provides support for Egan's argument, not HBLC and Fink's: "[The plaintiff] might have used § 1692e to file a counterclaim in Indiana and could have appealed

within the state system. He did neither. His federal suit was properly dismissed." *Harold*, 773 F.3d at 887. In the case at bar, Egan did file a counterclaim and is proceeding within the state system. Thus, *Harold* provides no support for HBLC and Fink's argument.

¶ 44    In the case at bar, Egan alleges that HBLC and Fink violated the FDCPA by filing a debt-collection complaint that they knew was time barred. Following the numerous federal court cases that have found that such allegations can support a claim under the FDCPA, we reverse the dismissal of Egan's counterclaim under section 2-615 of the Code.

¶ 45                                   CONCLUSION

¶ 46    For the foregoing reasons, the trial court erred in dismissing count I of Egan's amended class action counterclaim under section 2-615 of the Code.

¶ 47    Reversed.